## MASAMI ASAEDA *v.* MINORU HARAGUCHI.

## NO. 2652.

ARGUED JUNE 16, 1947.
SUBMITTED JULY 7, 1947.          DECIDED JULY 24, 1947.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE MOORE IN PLACE OF LE BARON, J., ABSENT.

OPINION OF THE COURT BY KEMP, C. J.

From a compensation order in favor of Masami Asaeda against Minoru Haraguchi, his employer, an appeal was taken by Haraguchi to the Labor and Industrial Relations Appeal Board, Bureau of Workmen's Compensation, Territory of Hawaii, and the appeal board has reserved to this court for its opinion and decision the following question of law: "Is an injury received by a workman employed at his regular job, by an unprovoked assault by a third party, a compensable injury under chapter 77, Revised Laws of Hawaii 1945, as an injury arising out of and in the course of the employment?"

The statutory provisions having a bearing on the question are portions of sections 4403, as amended, and 4401, as follows:

"Sec. 4403. Employments covered. This chapter shall apply to any and all industrial employment, as defined in this chapter. If a workman receive personal injury by accident arising out of and in the course of the employment * * * his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified.* * * "

"Sec. 4401. Definitions. In this chapter, unless the context otherwise requires: * * * 'Personal injury by accident arising out of and in the course of the employment' shall include an injury caused by the wilful act of a third person directed against an employee because of his employment. * * * "

It is apparent that the reserved question as framed calls upon us to advise the appeal board whether or not, under any circumstances, an injury inflicted upon a work-

man by an unprovoked assault by a third person can be deemed to have arisen out of and in the course of his employment. If we were to answer the question as we construe it, without regard to the properly found facts of a given case, our answer would necessarily be that such an injury would under certain circumstances be compensable.

The parties, however, have treated the question as containing the facts of the case of *Masami Asaeda* v. *Minoru Haraguchi* pending before the appeal board, and the appeal board has certified the following as the facts of that case:

"MASAMI ASAEDA was regularly employed by Minoru Haraguchi as a painter. On July 6, 1946, the employer was engaged in a paint job at the house of F. Vierra, 1585 Murphy Street, Honolulu, T. H., and Asaeda was working on this job. While they were eating their lunches, sitting in the yard, Asaeda was attacked by a third party who entered the Vierra premises, and was severely injured by being struck several times on the head with an iron pipe. There was no provocation by Asaeda for the attack and he had no opportunity to protect himself. The assailant was a parolee from Kaneohe Hospital who suddenly ran amok and who lived on the adjoining premises. Asaeda was being paid for the lunch period on the day of the accident."

This is the first time this court has been called upon to consider a case involving an injury to an employee caused by an assault upon the employee by a third person or to use the statutory language "an injury caused by the wilful act of a third person." Courts in many other jurisdictions have dealt with the question and it appears that, as applied to a given case, the answer depends upon more circumstances than are revealed by the question, or by the question and the facts, certified to us by the appeal board. In an attempt to remedy that defect the parties have stipu-

lated additional facts and have submitted for our perusal a transcript of the evidence adduced before the assistant director, upon which the compensation order was based. The appeal board has certified that the award of compensation was based upon a finding by the assistant director that "the injury was received by accident arising out of and in the course of employment." We have not, however, been given a statement of all the ultimate facts which could be found from the evidence adduced. But, in view of the importance of the question, we shall attempt to guide the board to a correct application of the ultimate facts found or to be found by it from the evidence.

Our first problem is one of statutory construction. We must determine what effect the definition or interpretative clause quoted from section 4401 has on the meaning of the words "injury by accident arising out of and in the course of the employment."

We think it is obvious that the legislature wanted to make sure that an injury caused by the wilful act of a third person would under certain circumstances be held to be accidental and to have arisen out of the employment. The circumstance under which such an injury is to be so held is that the wilful act be directed against the employee because of his employment. In other words, if the wilful act is directed against the employee because of his employment then the resulting injury is deemed to have resulted from an accident and to have arisen out of his employment. The words "because of his employment" as used in section 4401 are synonymous with the words "arising out of * * * the employment," as used in section 4403.

Counsel for Haraguchi admits that Asaeda's injury was the result of an accident and was received in the course of his employment but contends that it did not arise out of his employment. We therefore confine our research

to a consideration of authorities dealing with the meaning of the words "arising out of the employment."

Authorities dealing with the meaning of the phrase under consideration are pertinent whether the case being considered involves an injury caused by the wilful act of a third person or otherwise. Lord Shaw's statement in *Thom* v. *Sinclair* (1917), A. C. 127, at 142, of his understanding of the phrase, has had a profound effect upon the American courts. He said in part: "There may be cause of danger arising to all employees, which causes are not confined to the individual situation, but are general and applicable to the employment as a whole. It may be that that employment is underground, with all the risks attached to underground work. It may be in the air or on the sea, with a special exposure to the dangers relative to such elements; or it may be on the surface of the earth, in surroundings which are those of peril. In all such cases it is quite possible to figure injuries by accident in the course of and arising out of the employment, which are totally disconnected with the nature of the employment upon which the workman was generally or for the moment engaged, but which, without any doubt, sprang from the employment in the sense that it was on account of the obligations or conditions thereof, and on that account alone, that he incurred the danger. In short, my view of the statute is that the expression 'arising out of the employment' is not confined to the mere 'nature of the employment.' The expression, in my opinion, applies to the employment as such—to its nature, its conditions, its obligations, and its incidents. If by reason of any of these the workman is brought within the zone of special danger and so injured or killed, it appears to me that the broad words of the statute 'arising out of the employment' apply."

In support of his views as to the meaning of the words "arising out of the employment" Lord Shaw cited nine

English cases which he termed "location" cases. Despite a great variety of expression in said cases, he considered them as authority in support of his construction of the statute.

The facts in the *Thom* case were that a woman employed by a fish-curer, while working in a shed belonging to her employer, was injured by the fall of a wall which was being built on the property of an adjoining proprietor, with the result that the roof of the shed collapsed and the woman was buried under the wreckage.

In the *Thom* case the trier of the facts found that the conditions of Thom's employment "obliged her to work where she was and exposed her to the risk of said accident" and it was on this finding of fact that Lord Shaw rendered his judgment that her injury arose out of her employment and was therefore compensable.

In the case of *Dennis* v. *A. J. White and Company* (1917) A. C. 479, Lord Shaw, at pages 490, 491, emphasized the importance of the trier making precise and definite findings of fact and it was only because the parties agreed that the "workman was sent by his employers' orders out into the traffic of the streets of London, on his masters' business, and instructed to use a bicycle in the necessary perambulations" that he agreed to do other than send the case back to the arbitrator for precise findings of fact before proceeding to determine the question of law, if any, which they raised. On the agreed facts he held that the *Dennis* case was clearly covered by the decision in the case of *Thom*. In fact he pointed out that it was much clearer that Dennis incurred the danger which his employment made him confront while performing the obligations of his employment under the conditions of his employment than it was that Thom did.

These two English cases establish for the English courts the proposition that for an injury to arise out of the em-

ployment it is sufficient if it is attributable to the nature, the conditions, the obligations or the incidents of the employment.

In *Matter of Katz* v. *A. Kadans & Co.*, 232 N. Y. 420, 134 N. E. 330, 331, 23 A. L. R. 401, the claimant, a dairyman's chauffeur, while driving his employer's car on a street on his employer's business, was stabbed by an insane man who ran amuck and stabbed everyone he could reach. On the authority of *Dennis* v. *A. J. White and Company*, *supra*, Justices Pound, Hogan, Cardozo and Crane held the chauffeur's injury entitled him to compensation on the theory that his injuries arose out of his employment. Chief Justice Hiscock and Justices McLaughlin and Andrews dissented but filed no opinion. The majority opinion proceeds on the theory that a street becomes a dangerous place when street brawlers, highwaymen, escaping criminals or violent madmen are afoot therein, as they sometimes are, and that if the employment exposes the workman to the danger by sending him on to the street, the fact that the danger is one to which everyone on the street is exposed does not of itself defeat compensation. The case is differentiated from a case where one is hurt in the street in an accident of a general nature not peculiar to the street, such as by a stroke of lightning or by a bomb dropped by enemy aircraft; neither of which is peculiar to the street.

In *Hartford Accident & Indemnity Co.* v. *Hoage*, 66 App. D. C. 160, 85 F. (2d) 417, the claimant, a chef, while at work in the kitchen where his duty required him to be, was stabbed by a man he had never seen before. The kitchen was situated between the lunchroom and the dining room and the stairway to the bathroom on the upper story, and patrons going from the lunchroom to the dining room or the bathroom had to pass through the kitchen. The court held that these facts present a question analogous

to the question presented when an employee is injured upon the public streets by hazards incident thereto while acting upon business of the employer, and hence the injury is compensable under the Longshoremen's and Harbor Workers' Compensation Act. The applicable section of the statute quoted by the court provides that "The term 'injury' means accidental injury or death arising out of and in the course of employment * * * and includes an injury caused by the wilful act of a third person directed against an employee because of his employment."

In *Kimbol* v. *Industrial Acc. Commission*, 173 Cal. 351, 160 Pac. 150, a second-story floor used for storage, as a result of overloading, suddenly gave way and fell with its overload into Kimbol's kitchen immediately under the falling floor. Douglas, a dishwasher in Kimbol's employ, at work in the kitchen, was struck by falling objects and injured. The floor was not included in Kimbol's lease of his restaurant and he had no control thereof, nor did he have any knowledge that the floor above was being used for storage purposes. It was in fact rented to another for a rooming house and the lease contained a clause that it should not be used for any other purpose. In a discussion of the question of whether or not the injury to Douglas arose out of his employment, Chief Justice Angellotti said, in part:

"The danger was peculiar to the particular place in which the employee was required to work. It is true that the accident was not actually foreseen or expected, but this is not necessary. It is sufficient that after the event it appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

"The question of special exposure by reason of the employment has been considered in various cases. The general rule deducible therefrom is that if the exposure of the

employee to a particular danger differs substantially from the normal risk to which all are subject, if the employment necessarily accentuates and increases the danger to a higher degree than that to which persons generally are subjected, then it may fairly be held that there was such special exposure to such danger as warrants a conclusion that the accident arose out of the employment, even though unexpected or unusual and in no way actually anticipated. * * * It has always been the law that it is the duty of the employer to use reasonable care to furnish an employee a safe place in which to do his work. If for *any reason*, whether due to the negligent or even criminal act of a third party or not, the place was in fact unsafe, the employer was liable to the employee for any injury due thereto, provided that if he had used reasonable care in the matter he would have known of the defect and would have remedied it. The condition as to the safety of the place in which the work was to be done is thus always a matter incident to the employment, and an injury arising from its unsafe condition has always been considered an injury arising out of the employment."

In *Hartford Accident & Indemnity Co.* v. *Cardillo*, 72 App. D. C. 52, 112 F. (2d) 11, it is held that in determining whether an injury is compensable as arising out of the employment the important fact is not the peculiar nature of the environment or of accidental risk, but that the work brings the worker within the orbit of danger. The injury need not be natural, normal, or predictable, though causal connection between work and injury is made more plain thereby. It is immaterial whether the risk arises from physical features or from human agencies connected with the place.

From an examination of the foregoing and many other authorities we conclude that according to the weight of authority it is the duty of an employer to furnish his em-

ployee a safe place in which to do his work, and that an injury arises out of the employment if the work brings the worker into a place of danger, whether the danger arises from physical conditions or from human agencies connected with the place; that it is not necessary that the danger be foreseen or expected but it is sufficient if, after the event, the injury appears to have flowed from that source as a rational consequence.

The appeal board is required by section 4442, Revised Laws of Hawaii 1945, to hold a full hearing *de novo* on the appeal before making its award, and to send a copy of its award to the parties and the director.

The cause is therefore remanded to the appeal board, with instructions to proceed to a full hearing *de novo*. If from the evidence it appears to the appeal board that the place in which Asaeda was required to work, as viewed after the event, was a zone of special danger as hereinbefore described, the board will necessarily conclude that his injury arose out of his employment and is therefore compensable.

*J. V. Hodgson* (also on the briefs), guardian ad litem and attorney for employee-appellee.

*C. A. Gregory (Smith, Wild, Beebe & Cades* with him on the briefs), for employer-appellant.