911 P.2d 77

**Charles E. ZEMIS, Claimant–Appellant,**

v.

**SCI CONTRACTORS, INC./E.E. BLACK, INC., Employer–Appellee, and American International Adjusting Company, Inc., Insurance Carrier–Appellee.**

No. 18660.

Supreme Court of Hawai'i.

Feb. 15, 1996.

Herbert R. Takahashi, Stanford H. Masui, Danny J. Vasconcellos and Rebecca L. Covert of Takahashi, Masui & Vasconcellos, on the briefs, Honolulu, for claimant-appellant.

Clyde Umebayashi and Muriel M. Taira of Kessner, Duca, Umebayashi, Bain & Matsunaga, on the briefs, Honolulu, for employer/insurance carrier-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this workers' compensation case, Claimant-appellant Charles E. Zemis (Zemis or Claimant), employed by SCI Contractors, Inc./E.E. Black, Inc. (Employer), suffered injuries as a result of an assault by a co-worker, Michael Gangloff. Zemis applied for workers' compensation benefits, and the Disability Compensation Division (DCD) of the

Department of Labor and Industrial Relations granted his claim, holding that Zemis's injuries arose out of and in the course of his employment. Employer and its insurer, American International Adjustment Company, Inc., appealed the DCD's decision to the Labor and Industrial Relations Appeals Board (the Board). The Board reversed the DCD's decision, holding that Zemis's injuries did not arise out of and in the course of his employment, and Zemis appealed.

Because we agree with the Board's conclusion that Zemis's injuries did not arise out of and in the course of his employment, we affirm the Board's reversal of the DCD's decision.

## I. BACKGROUND

On September 26, 1992, Zemis's automobile collided with a vehicle driven by Gangloff's wife, Michelle. At the time of the accident, Zemis was traveling on the H–3 Access Road (Access Road) toward his place of employment, the H–3 Windward Viaduct Project (project site), and Michelle was returning from the project site, where she had just dropped off her husband, who also worked at the project site. After the accident scene was cleared by the police, Gangloff took his wife to the hospital; Zemis, who was unharmed, reported to work.

Two days after the accident, on September 28, 1992, Zemis reported to work at the project site. Gangloff, who was a member of a different work crew than Zemis at the project site, was assigned to a work station approximately 1,000 feet from Zemis's work station.

Shortly after the work day began, Gangloff left his work area, proceeded to Zemis's work area, and confronted Zemis about his wife's automobile accident, blaming Zemis for the accident. Following a brief discussion, Gangloff struck Zemis in the face with Gangloff's hard hat, severely injuring Zemis. The discussion leading to the assault was the first time Zemis and Gangloff had ever spoken with each other.

On October 14, 1992, Zemis filed a claim for workers' compensation benefits for the injuries sustained as a result of the September 28, 1992 assault incident.

On March 9, 1993, the DCD issued its "Decision and Order," accepting compensability of the claim. The Director of the DCD determined that Zemis suffered "a personal injury to the head, face, nose, neck, back, and vision by accident arising out of and in the course of employment." The Director concluded:

> After a review of the entire matter, the Director finds that claimant suffered a compensable injury on [September] 28, 1992. In this case[,] we find the motive for the assault stemmed from a private quarrel since the argument leading to the assault involved the [September] 26, 1992 automobile accident. However, we find there are other factors in this case which lead to a compensable claim. Claimant stated he had spoken to the assailant's supervisor prior to the attack and was informed by the supervisor that the assailant was upset and was looking for him. Yet the assailant, a co-worker of claimant, was able to locate claimant at the job site and assault him without any intervention from employer. We find employer breached their duty to provide claimant with a safe place to work as indicated in *Asaeda* [*v. Haraguchi*, 37 Haw. 556 (1947)]. Also, we find there is sufficient connection between claimant's injury and his employment since the assailant struck claimant with a hard hat which is a instrument commonly used by workers in the construction industry.

On March 29, 1993, Employer appealed the DCD's March 9, 1993 decision. On December 29, 1993, the Board rendered its "Decision and Order," reversing the DCD's finding of compensability. In reversing the DCD's decision, the Board stated that, "[w]hen the assault stems from personal or private reasons and is not exacerbated or facilitated by the employment, it is not compensable." The Board further stated that, "[h]aving found that the assault arose out of a personal or private matter and that [Zemis's] employment contributed nothing to the incident, we conclude that Claimant did not sustain a personal injury on September 28, 1992 aris-

ing out of and in the course of his employment." Zemis's timely appeal to this court followed.

## II. *STANDARD OF REVIEW*

Appellate review of the Board's decision is governed by Hawai'i Revised Statutes (HRS) § 91–14(g) (1993), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

    (1) In violation of constitutional or statutory provisions; or

    (2) In excess of the statutory authority or jurisdiction of the agency; or

    (3) Made upon unlawful procedure; or

    (4) Affected by other error of law; or

    (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

    (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6). *Loui v. Board of Medical Examiners*, 78 Hawai'i 21, 25, 889 P.2d 705, 709 (1995).

**[A]ppeals taken from findings [of fact] set forth in decisions of the Board are reviewed under the clearly erroneous standard. Thus, this court considers whether such a finding is [c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.] The clearly erroneous standard requires this court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.**

A conclusion of law ... is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews [conclusions of law] *de novo,* under the right/wrong standard.

*Bumanglag v. Oahu Sugar Co., Ltd.,* 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (quoting *Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 102–03, 881 P.2d 1246, 1248–49 (1994) (brackets and ellipses in original)).

## III. *DISCUSSION*

It is well settled that,

[f]or an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.

*Tate v. GTE Hawaiian Tel. Co.,* 77 Hawai'i 100, 103, 881 P.2d 1246, 1249 (1994); HRS § 386–3 (1993) ("If an employee suffers personal injury ... by accident arising out of and in the course of the employment ..., the employee's employer ... shall pay compensation to the employee or the employee's dependents[.]").

The determination whether an injury arises out of and in the course of employment is governed by a "unitary" test that considers whether there is a sufficient work connection to bring the accident within the scope of the statute. *Tate,* 77 Hawai'i at 103, 881 P.2d at 1249. "[T]he work connection approach simply requires the finding of a causal connection between the injury and any incidents or conditions of employment." *Smith v. State,* 80 Hawai'i 150, 153–54, 907 P.2d 101, 104–05 (listing citations), *reconsideration denied,* 80 Hawai'i 187, 907 P.2d 773 (1995).

### A. *Hawai'i Revised Statutes § 386–3*

If an employee suffers personal injury ... by accident arising out of and in the course of the employment ..., the employee's employer ... shall pay compensation to the employee or the employee's dependents....

*Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.*

HRS § 386–3 (1993) (Emphasis added).

Under HRS § 386–3, where an employee is injured by the wilful act of a third person, a causal connection between the employment and the resulting injury may be found if the wilful act of the third person was "directed against [the] employee *because of the employee's employment.*" (Emphasis added). *See* 1 A. Larson, *The Law of Workmen's Compensation* § 11.00, at 3–178 (1995) [hereinafter, 1 Larson] ("Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. . . ."). The Board found that Zemis was not assaulted because of his employment; instead, the Board determined that the assault emanated from a personal dispute. For the reasons discussed below, we hold that the Board's finding that Zemis was not assaulted because of his employment is supported by reliable, probative, and substantial evidence and, therefore, is not clearly erroneous.

### 1. The assault was the result of a personal dispute.

■ A "causal connection [between the assault of an employee and the employee's] employment may be shown by connecting with the employment the subject matter of the dispute leading to the assault." 1 Larson, *supra*, § 11.12, at 3–208. The Board concluded that "[t]he motive for the assault arose out of a personal or private matter, that is, a nonwork-related motor vehicle accident involving Claimant and his co-worker's wife."

The operative findings of fact, as previously indicated, are as follows: (1) At the time of his injury, Zemis was employed by Employer; (2) On September 26, 1992, while driving to work, Claimant's automobile collided with a vehicle driven by Michelle Gangloff, the wife of Claimant's co-worker; (3) Two days later, on September 28, 1992, while on the job site, Michelle Gangloff's husband, Mi-

chael Gangloff, who was also employed by Employer, confronted Zemis about the automobile accident; (4) After an exchange of words, Gangloff struck Zemis in the face with his hard hat, causing substantial injuries to Zemis; and (5) Prior to the assault, Gangloff and Zemis were not acquaintances; they had never before conversed.

In reaching its finding that Zemis was not assaulted because of his employment, in addition to considering the foregoing findings of fact, which are not disputed, the Board observed that the automobile accident, which precipitated the assault, occurred on a public road. Zemis contends that the Board's finding that the automobile accident occurred on a public road was clearly erroneous because, according to Zemis, the accident occurred on a portion of the Access Road belonging to Employer. Even if we were to assume that Zemis is correct, the assault would not be transformed into a work-related event simply because the accident that precipitated the assault occurred on the employer's premises. The evidence unequivocally indicates that the accident, which was the subject matter of the dispute, was a personal matter, unconnected to Zemis's employment. Accordingly, we agree with the Board's finding that the assault was the product of a personal dispute.

### 2. The supervisor's alleged knowledge of Gangloff's intent to assault Zemis does not warrant the finding that Zemis was injured because of his employment.

■ Zemis argues that the assault was work-connected because Gangloff's supervisor allegedly knew about the accident involving Zemis and Gangloff's wife, that Gangloff was angry, and that Gangloff was looking for Zemis on the morning of the assault. The Board found that, "[e]ven if, as Claimant testified, Employer had knowledge of the motor vehicle accident and [that] Gangloff was visibly upset and looking to speak with Claimant on September 28, 1992, Employer had no reason to suspect or foresee that Gangloff would assault or harm Claimant on that date."

Zemis argues that the Board committed reversible error in employing a foreseeability

test when making its determination regarding a causal connection between the supervisor's knowledge and the assault. Professor Larson states that,

> [t]he primary test of legal cause in the United States is foreseeability, which is "the fundamental basis of the law of negligence." ...

> But what relevance has foreseeability if one is not interested in the culpability of the actor's conduct? There is nothing in the theory of compensation liability that cares whether the employer foresaw particular kinds of harm or not. The only criterion is connection in fact with the employment; whether it is foreseeable in advance, or apparent only in retrospect. This criterion cannot in any logical sense be made to depend on foreseeability.

1 Larson, *supra,* § 6.60, at 3–9 and 3–10 (footnotes omitted); *see Messier v. Association of Apartment Owners of Mt. Terrace,* 6 Haw.App. 525, 538, 735 P.2d 939, 949 (1987) ("HRS chapter 386 requires employers to compensate their employees for job-related injuries regardless of fault." (Citation omitted.)). Although we agree with Zemis's contention that the Board erred in its use of the concept of foreseeability, such error does not warrant reversal because the employer's knowledge of a risk of assault does not necessarily establish the requisite causal connection between the assault and the employment. As Professor Larson states, "the employer's or superior's knowledge of the risk may be adduced as an added *factor* supporting compensability." 1 Larson, *supra,* § 11.11(d), at 3–207 (emphasis added).

At the hearing, Zemis testified that Bob Downey, Gangloff's supervisor, informed him (Zemis) on the morning of September 28—before the assault—that Gangloff "was really upset" and looking for Zemis. The record indicates, however, that Downey denied advising Zemis that Gangloff was upset and looking for him.[1]

Here, when considering Employer's alleged knowledge of the risk of assault, the issue is not whether the assault was foreseeable, but whether the Employer's alleged knowledge that Gangloff was upset and looking for Zemis establishes "a causal connection between the injury and any incidents or conditions of [Zemis's] employment." *Smith,* 80 Hawai'i at 153–54, 907 P.2d at 104–05. Based on the record, we cannot conclude that the Board's ultimate finding disregarding Downey's alleged knowledge was clearly erroneous. Even if we were to accept Zemis's assertion that Downey knew that Gangloff was upset and looking for Zemis, such assertion is merely "an added factor" to be considered in determining compensability. We do not believe, however, that, under the facts of this case, such factor would be sufficient to establish a causal connection between Zemis's employment and the assault. As stated above, under HRS § 386–3, where an employee is intentionally assaulted on the job site by a third person, the resulting injury is not causally connected to the employment unless the assault itself was "directed against the employee because of the employee's employment." A personally motivated assault of an employee by a third person may be considered as having occurred "because of the employee's employment," if the animosity or dispute which culminated in the assault was "exacerbated by the employment." 1 Larson, § 11.21(a), at 3–274 ("When the animosity or dispute that culminates in an assault [of an employee] is imported into the employment from [the employee's] domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test."). Under the circumstances of this case, we fail to see how Downey's alleged knowledge that Gangloff was upset and looking for Zemis could warrant the finding that the assault was directed against Zemis because of his employment. Prior to the assault, Gangloff and Zemis had never before worked together—in fact, they had never before even conversed—

---

**1.** Gangloff's supervisor, Downey, avers in an affidavit that, "prior to [the assault, I] did not advise Claimant that Michael Gangloff was upset at Claimant and was looking for him." Downey further attests that, "prior to [the assault, I] did not know that Michael Gangloff felt any ill-will towards Claimant, nor that Michael Gangloff intended to assault or otherwise physically harm Claimant."

and on the day of the assault, they were assigned to work crews approximately 1,000 feet apart.

B. *The fact that Zemis was assaulted on the job site does not warrant the finding that Zemis was assaulted because of his employment.*

Zemis further contends that the assault was work-connected because he was required to work on the same project as Gangloff. Zemis argues that "[b]ut for Gangloff being required to work on the H–3 viaduct project on September 28, 1992, the accident/assault would not have occurred." This contention is without merit.

█ "The mere fact that association in the same work gives opportunity for an assault is not sufficient to justify a compensation award to the injured employee." 99 C.J.S. *Workmen's Compensation* § 226, at 758 (citing *Armour & Co. v. Industrial Comm'n*, 397 Ill. 433, 74 N.E.2d 704 (1947); *Long v. Schultz Shoe Co.*, 257 S.W.2d 211, 213 (Mo.Ct.App. 1953) ("[W]here an injury to one employee results from another employee's commission of a criminal offense, the injury will not be compensable from the mere circumstance that the employment had brought the offender and the victim into association with each other, but instead, before compensation may be allowed, it must appear that the offense grew out of or had some direct relation to the details of the work itself.")); *Robbins v. Nicholson*, 281 N.C. 234, 188 S.E.2d 350, 354 (1972) ("[W]hen the moving clause [sic] of an assault upon an employee by a third person is personal, or the circumstances surrounding the assault furnish no basis for a reasonable inference that the nature of the employment created the risk of such an attack, the injury is not compensable. This is true even though the employee was engaged in the performance of his duties at the time, for even though the employment may have provided a convenient opportunity for the attack it was not the cause."); *Tate*, 77 Hawai'i at 106, 881 P.2d at 1252 ("Injuries occurring on an employer's premises are covered by work-

ers' compensation only insofar as they arise out of employment-related risks." (Footnote omitted.)). In the present case, the fact that the assault occurred at the project worksite was merely fortuitous; evidently, Gangloff was determined to have his vengeance wherever he might find Zemis.

C. *The fact that Gangloff struck Zemis with an implement of his employment—a hard hat—does not warrant the finding that Zemis was assaulted because of his employment.*

█ Zemis asserts that the injuries he suffered are work-connected because Gangloff utilized an implement of his employment—his hard hat—to deliver the injurious blow to Zemis. The Board stated that, as a conclusion of law, "[w]e fail to see how weapon choice could change an otherwise personal assault to a work-related one...." For the reasons discussed below, we hold that the Board's conclusion is correct.

█ A personal assault upon an employee by a co-worker is not causally connected to the employee's employment simply because the assailant utilized an implement of the employment to deliver the injurious blow. *See, e.g., White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 360 S.W.2d 12, 15 (1962) (deeming insignificant the fact that "the murder weapon belonged to the employer" and concluding that "the fact that [the employee] lost her life in her employer's place of business was merely a coincidence"); *Rice v. Revere Copper & Brass*, 186 Md. 561, 48 A.2d 166, 169 (1946) (holding that "the mere relationship of co-employment, plus the fact that the blow was delivered by co-employee with an implement belonging to the employer, are not sufficient to establish either a primary or causal connection between the working environment and the injury"); *Bader–Rondeau v. Truth or Consequences*, 113 N.M. 218, 824 P.2d 358, 360 (App.1991) (stating "it is a general rule that even where the employer supplies *a weapon* [2] for use in carrying out the work of the employer and the weapon is used by a co-worker to injure an employee in

---

2. This rule particularly weighs against coverage in the instant case because—although Zemis terms the hard hat a "lethal weapon"—a hard hat is certainly of a different character than other items more commonly employed as weapons (*e.g.,* a gun or a knife).

the course of an otherwise intentional and personal assault, the mere fact of furnishing such weapon does not provide a sufficient causal link to require a finding that the injury arose out of the employment." (Emphasis and footnote added.)). As the New Mexico Court of Appeals stated in *Bader–Rondeau,* "it is not the mechanism of injury or its relationship to the employment that is dispositive; rather, it is the *motivation* behind the altercation or assault." *Id.* at 360 (emphasis added). Thus, we hold that the Board correctly determined that Gangloff's utilization of his hard hat to strike Zemis does not warrant a finding that Zemis was assaulted because of his employment.

### D. *The Positional Risk Doctrine*

█ Finally, Zemis asserts that the Board incorrectly determined that the positional risk doctrine was inapplicable to his claim. We disagree.

Under the positional risk doctrine, "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he [or she] was injured." 1 Larson, *supra,* § 6.50, at 3–6 (emphasis in original); *Asaeda v. Haraguchi,* 37 Haw. 556 (1947) ("[A]n injury arises out of the employment if the work brings the worker into a place of danger, whether the danger arises from physical conditions or from human agencies connected with the place . . . ."). However,

[w]hen it is clear that the origin of the assault was purely private and personal,

and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held noncompensable even in states fully accepting the positional risk test, since that test applies only when the risk is "neutral."

1 Larson, *supra,* § 11.21(c), at 3–285 to 3–286 (footnotes omitted). According to Larson, a risk is "neutral" if it is "neither personal to the claimant nor distinctly associated with the employment." 1 Larson, *supra,* § 6.50, at 3–7.[3] As discussed above, the origin of the assault in this case was purely private and personal. Accordingly, we hold that the Board correctly concluded that the positional risk doctrine is inapplicable.[4]

## IV. *CONCLUSION*

Based on the foregoing, we affirm the Board's reversal of the DCD's decision and hold that Zemis is not entitled to workers' compensation benefits because Zemis was not assaulted "because of [his] employment" and, therefore, the injuries he sustained as a result of the assault by Gangloff did not arise out of and in the course of his employment.

---

**3.** Larson further explains that "[t]his theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he [or she] was injured by some neutral force." 1 Larson, *supra,* § 6.50, at 3–6 and 3–7.

**4.** We acknowledge that Attorney General Opinion No. 73–4, referred to in the notes under HRS § 386–3, states that, "[w]here employee at work is injured and dies as a result of an assault by a third party, compensation should be awarded notwithstanding the assault may have arisen from personal matters." The attorney general's opinion, however, fails to recognize that the positional risk doctrine applies only when the risk is

neutral. The attorney general's approach "overlooks the justification of the positional risk doctrine, which is that [a] very slight employment contribution (bringing [claimant] to the place where he [or she] is [injured]) is enough to swing the balance [in favor of compensation] only if it is not offset by a positive showing of personal cause of the harm. In the usual positional [risk] cases, . . . the source of the harm has no more to do with claimant's private life than with his [or her] employment." 1 Larson, *supra,* § 11.21(c), at 3–287. Moreover, the attorney general's reliance on *Asaeda* and *Pacheco v. Orchids of Hawai'i,* 54 Haw. 66, 54 Haw. 166, 502 P.2d 1399 (1972), both of which involve risks that were "neutral", is misplaced. Thus, we believe that the attorney general's opinion is erroneous.