Electronically Filed
Intermediate Court of Appeals
29757
30-APR-2012
09:43 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


ROSA YANG, Plaintiff-Appellee, v.
ABERCROMBIE & FITCH STORES, Defendant-Appellant,
and JOHN PEYTON, DUSTIN ARES, JOHN DOES 1-10,
JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE
PARTNERSHIPS 1-10, DOE ENTITIES 1-10, and DOE
GOVERNMENTAL ENTITIES 1-10, Defendants


NO. 29757


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 08-1-1025-05 GJK)


APRIL 30, 2012


NAKAMURA, CHIEF JUDGE, FUJISE and LEONARD, JJ.


OPINION OF THE COURT BY LEONARD, J.

Defendant-Appellant Abercrombie & Fitch Stores, Inc.
(**A&F**) brings this interlocutory appeal from the Circuit Court of
the First Circuit's (**Circuit Court's**) Order Denying Defendant
Abercrombie & Fitch Stores' Motion To Dismiss Plaintiff Rosa
Yang's Complaint Filed On May 20, 2008 (**Order Denying Dismissal**),
which was filed on March 12, 2009.[1]  In the Order Denying
Dismissal, the Circuit Court rejected A&F's request to dismiss

---

[1]    The Honorable Glenn J. Kim presided.

Plaintiff-Appellee Rosa Yang's (**Yang's**) claims against A&F on the ground that Yang's claims are all barred by the exclusive remedy provision in the Hawai'i Workers' Compensation Law, which is set forth in Hawaii Revised Statutes (**HRS**) § 386-5 (1993).

As discussed herein, we hold that the exclusivity provision in HRS § 386-5 bars Yang's claims against A&F for the personal injuries she allegedly suffered arising out of and in the course of her employment, which were allegedly caused by the willful acts of her co-employees acting in the course and scope of their employment, but that this provision does not bar Yang's claim for wrongful termination in violation of public policy. Accordingly, we affirm in part and vacate in part, remanding the case to the Circuit Court.

I.     BACKGROUND

A.     The Incident at A&F's Store

On a motion to dismiss, the facts alleged in the complaint are considered to be true. Bremner v. City & Cnty. of Honolulu, 96 Hawai'i 134, 138, 28 P.3d 350, 355 (App. 2001). Accordingly, for the purpose of this review, we present the facts as they are alleged in Yang's complaint.

Yang was a store manager at the A&F Men's Store (**Men's Store**) at the Ala Moana Shopping Center in Honolulu. A&F is an Ohio corporation registered to do business in the State of Hawai'i. On or about March 6 or 7, 2007, a wallet (**Wallet**) was found and turned over to Yang and another manager while they were working at the Men's Store. Yang and the other manager found $600 in cash (**Money**) in the Wallet and placed the Wallet and its contents in a safe located in the Men's Store.

After returning to the Men's Store a few days later, Yang checked the Wallet in the safe and discovered that the Money was missing. On March 12, 2007, Yang reported the Money missing

to Defendant-Appellee John Peyton (**Peyton**),[2] an A&F Loss Prevention Agent. After conducting interviews with "everyone" about the Wallet and viewing security video footage, on March 16, 2007, Peyton escorted Yang out of the Men's Store, "in plain view", to the manager's office at the A&F Women's Store.

Peyton closed the office door and informed Yang that he wanted her to speak with a second A&F Loss Prevention Agent, Defendant-Appellee Dustin Ares (**Ares**).[3] Ares began interrogating Yang over the phone and asking for personal information. Ares then began describing the means and motivations of employees who steal and cheat the company, as well as A&F's loss prevention methods. He asked Yang when was the first time she had taken money out of A&F. Yang was completely taken aback and denied that she had ever taken any money. Despite this denial, Ares and Peyton persisted in their allegations, including that she took the Money out of the Wallet, and pressured her to confess. Yang felt embarrassed, harassed, insulted, and humiliated. At the conclusion of the interrogation, Peyton suspended her "without any factual evidence proving that [Yang] had taken the Money." He retrieved her handbag from the Men's Store and escorted her out of the Women's Store in plain view of her co-workers. Yang had been crying and was very embarrassed to be seen in that condition.

In addition, in conjunction with her claim for wrongful termination, Yang alleges that she was suspended and then terminated for abusing A&F's discount policy, without any factual or legal basis.

---

[2] Although named as a defendant, Peyton has not been served with the complaint.

[3] Like Peyton, although named as a defendant, Ares has not been served with the complaint.

B.    The Proceedings Below

On March 22, 2007, Yang filed a claim with the Department of Labor and Industrial Relations (**DLIR**) seeking workers' compensation benefits for a stress-related injury arising out of the above-described incident. On October 17, 2007, DLIR rendered a decision that Yang was entitled to receive workers' compensation benefits.

On May 20, 2008, Yang filed a complaint, which included the following counts: (1) unlawful and/or false imprisonment; (2) harassment; (3) defamation and/or defamation *per se*; (4) false light invasion of privacy; (5) wrongful termination in violation of public policy; (6) tortious interference with contractual relations; (7) tortious interference with economic or prospective opportunities; (8) civil conspiracy; (9) intentional infliction of emotional distress; and (10) willful and wanton conduct. As averred in the complaint, and as confirmed at the oral argument before this court, all of Yang's claims arise out of the assertion that Peyton and Ares engaged in tortious conduct, while in the course and scope of their employment with A&F, for which they should be held personally and individually liable to Yang, and that A&F should be held liable to Yang based on respondeat superior and/or vicarious liability. Yang prayed for general, special, compensatory, and punitive damages.

On June 16, 2008, A&F filed its motion to dismiss pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b)(6) and Hawai'i's Workers' Compensation Law, which is set forth in HRS Chapter 386. After opposition and reply memoranda were filed, a hearing was held on July 31, 2008. At the hearing, the Circuit Court stated its preliminary analysis, but asked for supplemental briefing. After further briefing by both parties, another hearing was held on October 28, 2008. The Circuit Court denied A&F's motion to dismiss, explaining:

4

All right.  The Court's view, [] with all due respect, is still that I'm constrained by the plain language of the applicable statutes as I understand it.  And as I understand it, again, it covers accidents.  I don't think the intentional acts of the employer count as accidents. Accidents specifically under the statute do include the willful act of third persons directed against the employee. And these third persons can be co-employees.  And I agree with you there's a lot of case law on that.  But I don't think -- as I said, I don't think any of the cases are on point as to the situation, the factual situation that's alleged here.  I just don't think a third person is the same thing as the employer.  And the willful acts of third persons that are also included in the definition of accidents are just that.  They're the willful acts of third persons, not the employer.
I'm still troubled by the potential double recovery issue, as I'm troubled by the implications of what the Court sees as the plain language of the statute.
I'm going to deny your motion to dismiss for those reasons.  But if you want to take it up interlocutory, I'll let you do it.  So -- because I think, you know, obviously I could be wrong about this.  And I can see that, because to me, it's a very -- it's kind of a strange situation in the Court's view.  The Court's -- as I said, the Court looks at the -- looks at the plain language as I understand it and it seems to constrain one ruling, but that ruling seems to go against certain other principles.
So -- and again, the Court understands that the statement in the Furukawa case is dicta.  We talked about that last time too. But there is that statement in Furukawa which says most states recognize that all or nearly all intentionally tortious acts committed by the employer against the employee in the course of employment are excluded from the workers' compensation system.  I mean, that language is clearly in Furukawa.  It's not necessarily a part of the holding.  I understand that.  But it's there.  And that's our Supreme Court that said that.

After the Order Denying Dismissal was entered, A&F filed a motion for approval of interlocutory appeal, which was granted pursuant to HRS § 641-1(b) (1993 & Supp. 2010).  This timely appeal followed.

II.  POINTS OF ERROR ON APPEAL

A&F raises the following, as its points of error:

(1)  The Circuit Court erred in concluding that the exclusive remedy provision in HRS § 386-5 did not bar Yang's suit for alleged injuries suffered because of her employment, which were caused by the alleged willful acts of her co-employees acting in the course and scope of their employment;

(2)   The Circuit Court erred in concluding that Furukawa v. Honolulu Zoological Soc'y, 85 Hawai'i 7, 936 P.2d 643 (1997), created an exception to the exclusive remedy provision under HRS § 386-5 for all intentional torts;

(3)   The Circuit Court erred in concluding that an intentional tort committed by a co-employee acting in the course and scope of his or her employment is not an "accident," as defined in the HRS § 386-3 because the employer is vicariously liable for the intentional acts of its employees;

(4)   The Circuit Court erred in concluding that a co-employee is not a "third person" as used in HRS § 386-3(a) and, therefore, the "willful acts" of the co-employee are not covered by Hawai'i's Workers' Compensation Law; and

(5)   The Circuit Court erred in failing to dismiss Yang's complaint against A&F where she seeks a double recovery, i.e., damages in a lawsuit against her employer as well as workers' compensation benefits, for the same injury allegedly suffered in the course of her employment.

III.   STANDARDS OF REVIEW

The appellate court reviews a trial court's ruling on an HRCP Rule 12(b)(6) motion to dismiss de novo.   AFL Hotel & Rest. Workers Health & Welfare Trust Fund v. Bosque, 110 Hawai'i 318, 321, 132 P.3d 1229, 1232 (2006).

Questions of law are reviewed upon appeal under the right/wrong standard of review.   Maile Sky Court Co. v. City & Cnty. of Honolulu, 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) (citation omitted).   "The standard of review for statutory construction is well-established.   The interpretation of a statute is a question of law which this court reviews de novo. Where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." Liberty Mut. Fire Ins. Co. v. Dennison, 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005) (citation and quotation marks omitted).

6

Thus, we apply the right or wrong standard to the Circuit Court's determination that Yang's claims against A&F are not barred by the exclusivity provision in the Hawai'i Workers' Compensation Law.

IV.   DISCUSSION

A.   The Workers' Compensation Statute

The central issue in this case is whether Yang's claims against A&F are statutorily barred because Yang's alleged injuries arose out of her employment with A&F.   The starting point in statutory construction is to determine the legislative intent from the language of the statute itself, reading it in the context of the entire statute and consistent with its purpose. Lingle v. Haw. Gov't Emps. Ass'n Local 152, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005).   "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.   What is clear in one statute may be called upon in aid to explain what is doubtful in another."   Nelson v. Univ. of Haw., 97 Hawai'i 376, 393, 38 P.3d 95, 112 (2001) (citation omitted); HRS § 1-16 (2009).

The exclusive remedy provision of the Hawai'i Workers' Compensation Law, HRS § 386-5 (1993), provides:

> **Exclusiveness of right to compensation; exception.**
> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

The sweeping scope of this provision is plain.   Under the workers' compensation statute, the workers' compensation benefits provided to an employee on account of a work injury "*shall exclude all other liability of the employer to the employee . . .*" on account of that injury.   Specific exceptions

7

were later carved out by the Legislature:  sexual harassment or sexual assault - *not* harassment or assault in general; infliction of emotional distress related to sexual assault or sexual harassment - *not* just any infliction of emotional distress; invasion of privacy related to sexual assault or sexual harassment - *not* invasion of privacy generally.  See Nelson, 97 Hawai'i at 394-95, 38 P.3d at 113-14, and Furukawa 85 Hawai'i at 18, 936 P.2d at 654 (both discussing that the purpose of the 1992 amendments to exclusivity provision was to *enable* employees to file suits based on sexual harassment or sexual assault arising out of and in the course of employment).

HRS § 386-1 (1993) defines "work injury" as a "personal injury suffered under the conditions specified in section 386-3." HRS § 386-3(a) (Supp. 2011) describes the nature of the injuries that are compensable:

> **Injuries covered.** (a) If an employee suffers personal injury either by **accident arising out of and in the course of the employment** or by disease proximately caused by or resulting from the nature of the employment, the employee's employer or the special compensation fund shall pay compensation to the employee or the employee's dependents as provided in this chapter.
>
> **Accident arising out of and in the course of the employment includes the wilful act of a third person directed against an employee because of the employee's employment.**

(Emphasis added.)

HRS § 386-8, which covers the liability of a third person for a compensable work injury, provides, in relevant part:

> **Liability of third person.**  When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his employment a legal liability to pay damages on account thereof, the injured employee or his dependents . . . may claim compensation under this chapter and recover damages from such third person.
>  . . . .

> Another employee of the same employer shall not be relieved of his liability as a third party, if the personal injury is caused by his wilful and wanton misconduct.

(Emphasis added.)

B.     Hawai'i Workers' Compensation Jurisprudence

The Hawai'i Workers' Compensation Law has a long history demonstrating the consistent application of the statute's exclusive remedy provision, with great judicial deference to Legislature's perview, and resulting certainty for workers and employers.  The following Hawai'i Supreme Court cases do not constitute an exhaustive survey of cases, but exemplify the treatment of the exclusivity provision and inform our views on the issue presented in this case.

The Hawai'i Supreme Court has demonstrated great reluctance to narrow the scope of the exclusivity provision, recognizing the pros and cons of doing so, but maintaining its deference to the Legislature's domain.  For example, in Kamali v. Hawaiian Elec. Co., 54 Haw. 153, 504 P.2d 861 (1972), a defendant and third-party plaintiff sought contribution from the employer of an injured worker, alleging that the employer was a joint tortfeasor.  Noting that most jurisdictions with similar exclusivity provisions have held that such claims are barred, the supreme court explained:

> This position is compelling, particularly in light of a clear expression of legislative intent to absolve the employer of all liability save that imposed by statute.  The purpose of such legislation is to achieve certainty - certainty that an employee will be compensated for all work injuries regardless of his negligence or fault; and certainty with regard to the amount for which the employer shall be liable. The effect is a compromise where the chance that an employee may not recover at all and the chance that an employer will be charged with an excessive judgment are eliminated.
>
> The position of the majority of jurisdictions is that to allow contribution in the face of the exclusive liability provision of the Workmen's Compensation Law would be to strip the employer of the very protections intended by the statute.

However, a minority of jurisdictions have adopted a theory of limited contribution against an employer which does not subvert the policy of the Workmen's Compensation Law. Larson, The Law of Workmen's Compensation, § 76.22, p. 238 (1970). Basic to this position is the proposition that it is unfair for one joint tortfeasor to bear the entire loss merely because the other joint tortfeasor is an employer. Since full contribution would obviously render an employer's protection illusory, limited contribution is allowed up to the amount for which the employer would have been liable under the Workmen's Compensation Law.

The policy underlying the Workmen's Compensation Law and the principles of contribution among joint tortfeasors were reconciled in <u>Newport Air Park, Inc. v. United States</u>, 293 F.Supp. 809 (D.R.I. 1968), where the court adopted the minority position of limited contribution and stated at 815:

(1)     it preserves the economics of the compensation system;

(2)     it effectuates the policy of contribution which the passage of the uniform law (of contribution) suggests;

(3)     it harmonizes the compensation law with the law of contribution and

(4)     it protects the non-employer tortfeasor from the possible gross inequity of carrying the whole liability for wrongs caused in perhaps major part by the employer tortfeasor.

However, as equitable as the minority position is, HRS § 386-5 clearly and unequivocally precludes all contribution by a third party against an employer on the theory that the employer was a joint tortfeasor. **The adoption of any theory allowing contribution is a situation for legislative consideration.**

<u>Id.</u> at 157-59, 504 P.2d at 864-65 (emphasis added).

Thus, fully recognizing the policy considerations in favor of a narrower view, the Hawai'i Supreme Court grounded its decision in the overarching balance struck by the Legislature in creating the workers' compensation system and the clear directive that the liability of the employer was intended to be its only liability, direct or indirect, for its workers' injury, absent a further legislative action.

In <u>Estate of Coates v. Pacific Eng'g</u>, 71 Haw. 358, 791 P.2d 1257 (1990), the Hawai'i Supreme Court took a similarly hands-off approach when asked to limit the exclusivity bar to

negligence actions only, and to otherwise chip away at the exclusive remedy's scope. In <u>Estate of Coates</u>, the deceased employee's survivors recognized that the exclusivity provision of the Workers' Compensation Law barred a negligence action against the employer, but sought, *inter alia*, to recover under a strict liability theory. <u>Id.</u> at 360, 791 P.2d at 1259. Acknowledging that a handful of jurisdictions have allowed such suits under a "dual capacity doctrine," the supreme court instead embraced the following "strong arguments" against its adoption:

> Whatever frail vitality the dual capacity doctrine has in other jurisdictions, we do not think that it warrants adoption here. To do so might undermine extensively the policy sought to be achieved by the workmen's compensation act. <u>There are endlessly imaginable situations in which an employer might owe duties to the general public, or to non-employees, the breach of which would be asserted to avoid the exclusive liability provision in our statute. It would be an enormous, and perhaps illusory, task to draw a principled line of distinction between those situations in which the employee could sue and those in which he could not. The exclusive liability provision would, in any event, lose much of its effectiveness, and the workmen's compensation system as a whole might be destabilized.</u>
>
> <u>The Hawaii State Legislature, by enacting the exclusivity provision, intended that our Workers' Compensation system be the exclusive remedy for work-related injuries and deaths.</u>
>
> Authorities which support the doctrine do so on the basis of equity; that in order to avoid the purported harsh effects of the Workers' Compensation Act, the doctrine would allow the claimants to sue. Part of Appellants' argument is premised on the fact that if they are not allowed to sue on the theory of product liability, they will be unjustly denied their day in court. They also argue that the rule of exclusivity should yield to contemporary developments in the area of product liability law.
>
> While we sympathize with Appellants, we are unpersuaded by their argument.
>
> In view of the unequivocal expressed language of the statute 'to exclude all the liability of the employer,' to invoke equity to circumvent the clear intent of the legislature would require an unprincipled application of the law by this court. We have in the past rejected other challenges to the exclusivity of the Workers' Compensation Act, and we see no reason to change our position. <u>Costa Minors v. Flintkote, Co.</u>, 42 Haw. 518 (1958). <u>There are sound social and economic policy reasons which support the exclusivity of the Workers' Compensation Act, and it remains</u>

11

> for the legislature to reexamine those reasons in light of contemporary circumstances and to amend the Act if it chooses to do so.

Id. at 362-63, 791 P.2d 1259-60 (some citations omitted; emphasis added).

In Zemis v. SCI Contractors, Inc., 80 Hawai'i 442, 911 P.2d 77 (1996), an employee was physically assaulted and seriously injured by a fellow employee at their place of employment during the work day. Id. at 444, 911 P.2d at 79. The supreme court held that the claimant's injuries were not compensable under the workers' compensation statute because the assault was related to an automobile accident involving the claimant and his co-employee's wife and did not arise out of and in the course of employment. Id. The court began its discussion with the well-settled principle that:

> For an injury to be compensable under a workers' compensation statute, there must be a requisite nexus between the employment and the injury. The nexus requirement is articulated in Hawai'i, as in the majority of jurisdictions, on the basis that, to be compensable, an injury must arise out of and in the course of employment.

Id. at 445, 911 P.3d at 80 (citations and brackets omitted).

The supreme court analyzed the circumstances under which a willful act, in that case an assault, is covered by the workers' compensation statute:

> Under HRS § 386-3, where an employee is injured by the wilful act of a third person, a causal connection between the employment and the resulting injury may be found if the wilful act of the third person was directed against the employee *because of the employee's employment*. See 1 A. Larson, The Law of Workmen's Compensation § 11.00, at 3-178 (1995) ('Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work. . . .').

Id. at 446, 911 P.2d at 81 (internal quotation marks, brackets, & some parenthetical material omitted).

After analyzing the facts before the court, the supreme court repeated and further explained the circumstances under

which an intentional act, such as an assault, is covered by the Workers' Compensation Law:

> [Un]der HRS § 386-3, where an employee is intentionally assaulted on the job site by a third person, the resulting injury is not causally connected to the employment unless the assault itself was directed against the employee because of the employee's employment. A personally motivated assault of an employee by a third person may be considered as having occurred 'because of the employee's employment,' if the animosity or dispute which culminated in the assault was 'exacerbated by the employment.'

Id. at 447, 911 P.2d at 82 (citation omitted).

In Iddings v. Mee-Lee, 82 Hawai'i 1, 919 P.2d 263 (1996), the Hawai'i Supreme Court dealt with the scope and requirements of the willful and wanton misconduct exception to co-employee immunity under the Workers' Compensation Law. In doing so, the supreme court drew a sharp distinction between the broad immunity granted to employers by HRS § 386-5, and the more limited immunity granted to co-employees by HRS § 386-8, which permits civil suits against co-employees who have caused a personal injury by willful and wanton misconduct. Id. at 15, 919 P.2d at 277. The supreme court firmly rejected the argument that a supervisory employee should be treated as an "employer" for the purpose of determining whether he or she could be sued for willful and wanton misconduct. Id.

Finally, in Furukawa, an employee filed an employment discrimination suit against his employer, alleging violation of HRS Chapter 378, the Hawai'i statute making it unlawful, *inter alia*, for an employer to discriminate based on race and/or gender. Furukawa, 85 Hawai'i at 9, 936 P.2d at 645. The Hawai'i Supreme Court held that the circuit court erred in holding that the exclusivity provision in HRS § 386-5 barred Furukawa from making a claim for damages against his employer under either HRS § 368-17 (which allows legal remedies, including damages, to be awarded for discriminatory practices) or HRS § 378-5 (the remedies provision in Chapter 378). Id. at 16-19, 936 P.2d at

652-55. The holding of the supreme court was clearly directed at upholding the power of the Civil Rights Commission and the courts to award compensatory damages pursuant to the "remedial statutes designed to enforce civil rights protections and remedy the effects of discrimination[.]" Id. at 18-19, 936 P.2d at 654-55 (citations omitted). In the course of its discussion of the parties' argument, the supreme court stated:

> We agree with the Society that the workers' compensation scheme serves to bar a civil action for physical and emotional damages resulting from work-related injuries and accidents. However, Furukawa's claims are not based on any such accident, but rather on the alleged intentional conduct of members of the Society. Cf. Wharton v. Hawaiian Elec. Co., Inc., 80 Hawai'i 120, 123 n. 2, 906 P.2d 127, 130 n. 2 (1995) (affirming denial of workers compensation stress claim because injury arose out of worker's suspension for misconduct, but noting that '[i]f an employer's actions constitute unlawful discrimination ..., an injured employee may invoke rights in other forums. See, e.g., HRS §§ 378-2 and 378-32.'). Most states recognize that 'all or virtually all intentionally tortious acts committed by an employer against an employee in the course of employment are excluded from the workers' compensation system.' Fermino v. Fedco, Inc., 7 Cal.4th 701, 30 Cal. Rptr.2d 18, 21, 872 P.2d 559, 562 (1994); see also Van Biene v. ERA Helicopters, Inc., 779 P.2d 315, 318 (Alaska 1989); Medina v. Herrera, 927 S.W.2d 597, 600 (Tex. 1996).

Id. at 18, 936 P.3d at 654.

The mandate issued by the supreme court, however, was to give full effect to Hawai'i's civil rights statutes, which provide remedies that are not subject to the workers' compensation bar:

> Compensatory and punitive damages are generally available in employment discrimination cases, as remedies from a court or an agency, or both. . . . Furukawa properly filed his discrimination complaint with the commission[.] . . . The law is explicit that 'a workers' compensation claim or remedy does not bar relief on claims filed with the commission.' HRS § 368-17(b). [4/]

_____

4/     HRS § 368-17(b), which concerns the remedies that may be ordered by the Civil Rights Commission or a court, provides:

> (b)    Section 386-5 notwithstanding, a workers' compensation claim or remedy does not bar relief on claims filed with the commission.

> The [Civil Rights] Commission points out that the 1992 amendment [to the Workers' Compensation Law] was responding to concerns 'that victims of sexual harassment were often so traumatized by the occurrence' that they might fail to file with the commission within 180 days. The legislature at the same time added HRS § 378-3(10), which excepts victims of sexual harassment and sexual assault from having to file discrimination complaints with the commission under HRS § 378-4. Because the exemption in HRS § 368-17(b) would no longer apply to these cases, as no complaint would have been filed with the commission, the legislature amended HRS § 386-5 to make clear that such claims were not barred by the workers' compensation law. It would indeed be an awkward result to interpret the amendment to HRS § 386-5 to have effected a repeal of the provision it sought to implement.
>
> Furthermore, when the legislature passed the 1992 amendment to the workers' compensation exclusivity exemption, it did not repeal HRS § 368-17(b). To rule that the 1992 amendment effectively bars compensatory and punitive damages for all discrimination complaints filed with the commission would serve implicitly to repeal that section. Repeals by implication are disfavored. International Savings & Loan, Ltd. v. Wiig, 82 Hawaiʻi 197, 200, 921 P.2d 117, 120 (1996).

Id. at 18-19, 936 P.2d at 654-55 (some citations omitted; emphasis added).

C.    Application of the Exclusivity Provision

The plain language of HRS § 386-5, and the harmonious reading of the Workers' Compensation Law as a whole, mandates the conclusion that the workers' compensation remedies granted to Yang exclude all other liabilities of A&F to Yang on account of the personal injuries she allegedly suffered arising out of and in the course of her employment. As the supreme court discussed in Iddings, HRS § 386-8 clearly limits the immunity provided to a co-employee who has caused an injury by willful and wanton misconduct, which includes intentional and reckless acts. Iddings, 82 Hawaiʻi at 12, 919 P.2d at 274.[5]   Neither HRS § 386-

---

[5]    The supreme court held, inter alia, that:

the term 'wilful and wanton misconduct,' as used in HRS § 386-8, includes conduct that is either: (1) motivated by an actual intent to cause injury; or (2) committed in circumstances indicating that the injuring employee (a) has knowledge of the peril to be apprehended, (b) has knowledge that the injury is a probable, as opposed to a possible,

(continued...)

5 nor HRS § 386-8 include any such limitation for the immunity provided to the employer. Nor do these provisions allow, as Yang seeks to pursue, suit against the employer for the alleged willful and wanton misconduct of a complainant's fellow employee.

In amending HRS § 386-5 in 1992, the Legislature created an exception for sexual harassment, which would have been wholly unnecessary if the broader tort of harassment was excluded because it falls within the category of intentional torts. The same is true of the exceptions created for infliction of emotional distress and invasion of privacy related to sexual harassment or sexual assault. The adoption of Yang's argument would render the entire 1992 amendment to be superfluous and would erase the distinction drawn by the Legislature.

For the last fifty years (and more), the Hawai'i Supreme Court has steadfastly deferred to the Legislature concerning any limitations to the exclusivity of the workers' compensation remedy against employers, refusing to undermine the clarity and consistency of the carefully crafted balance of Hawai'i's workers' compensation scheme. The only arguable exception has been when the Legislature itself provided additional statutory remedies for employment discrimination, as discussed in Furukawa. The clear implication of Zemis, which disallowed workers' compensation benefits for injuries arising from an intentional act of assault because it did *not* occur "because of the employee's employment," is that an intentional act of assault that does occur "because of the employee's employment" does fall within the benefits, and related limitations, of the Workers' Compensation Law.

_____

[5] (...continued)
        result of the danger, and (c) consciously fails to avoid the
        peril.

Iddings, 82 Hawai'i at 12, 919 P.2d at 273.

In this light, we cannot read <u>Furukawa</u>'s recognition of decisions in other states as creating an exception to the exclusivity provision; that language did not expressly adopt the position of the other states, nor was it essential to the holding in that case. Indeed, a brief examination of the three cases referenced by the supreme court in <u>Furukawa</u> demonstrates the folly of placing undue emphasis on the court's comment. <u>See</u> <u>Furukawa</u>, 85 Hawaiʻi at 18, 936 P.2d at 654.

The Alaska case cited in <u>Furukawa</u>, <u>Van Biene v. ERA Helicopters, Inc.</u>, 779 P.2d 315 (Alaska 1989), reveals, *inter alia*, that the Alaska workers' compensation statute provides an identical immunity to employers and fellow employees, and does not include the type of statutory distinctions made in HRS § 386-8, which allows suit against co-employees for their willful and wanton misconduct. <u>Id.</u> at 318. In the absence of such legislative distinctions, the Alaska courts have allowed suits to be brought against both, if a claimant can meet the "stiff burden" to demonstrate a genuine "intent to harm", not merely a claim that can be construed as an intentional tort. <u>Id.</u> at 319.

The Texas case cited in <u>Furukawa</u>, <u>Medina v. Herrera</u>, 927 S.W.2d 597 (Tex. 1996), in fact held that "petitioner's claim against his employer is barred as a matter of law by his election of the workers' compensation remedy, but his claim against his co-worker is not barred." <u>Id.</u> at 598-99. While the decision rested on Texas jurisprudence stating that an employee's workers' compensation claim is mutually exclusive with an intentional tort remedy, the court also noted that Texas's workers' compensation statute "covers employees for intentional assaults committed by co-workers if the dispute underlying the assault is employment related." <u>Id.</u> at 600, 602 (citations omitted). The court's discussion evidenced a willingness by the Texas courts to allow intentional tort claims against employers, in limited instances

and as an alternative to the workers' compensation remedy, but upheld the dismissal of the employee's suit.  Id. at 600-02.

The California case cited in Furukawa, Fermino v. Fedco, Inc., 30 Cal. Rptr.2d 18 (Cal. 1994), reversed the dismissal of the employee's intentional tort claim, which had been dismissed as barred by the exclusivity provision of California's workers' compensation statute.  Id. at 20.  A careful reading of that case reveals that (what the California Supreme Court described as) the "complicated" place of intentional torts in the workers' compensation system is complicated because of the complex overlay of judicial exceptions and distinctions created in California case law.  The California court did not, however, create a wholesale exception for all intentional tort claims or even all allegations of false imprisonment, the tort at issue in that case.  Id. at 30.  The court stated:  "What we hold today, rather is that those classes of intentional employer crimes against the employee's person by means of violence and coercion [] violate the employee's reasonable expectations and transgress the limits of the [workers'] compensation bargain."  Id.  at 30 n.7.

As discussed above, the Hawai'i Supreme Court has steadfastly declined to impose a complicated overlay on the legislative structure of Hawai'i's Workers' Compensation Law, even when it recognized sound arguments for doing so.  The Hawai'i Legislature has created exceptions to the exclusivity provision in HRS § 386-5 for specific intentional acts, but not for others.  As the Hawai'i Supreme Court opined in Estate of Coates, and other decisions, "[t]here are sound social and economic policy reasons which support the exclusivity of the Workers' Compensation Act, and it remains for the legislature to reexamine those reasons in light of contemporary circumstances and to amend the Act if it chooses to do so."  71 Haw. at 363, 791 P.2d at 1260.

18

Accordingly, we conclude: (1) the exclusivity provision in HRS § 386-5 bars Yang's suit against A&F for alleged injuries suffered because of her employment, which were caused by the alleged willful acts of her co-employees acting in the course and scope of their employment; (2) Furukawa does not create an exception to the exclusive remedy provision under HRS § 386-5 for all intentional torts; (3) an intentional tort committed by a co-employee acting in the course and scope of his or her employment may be considered an "accident," as defined in the HRS § 386-3, if the intentional act was directed against the employee because of the employee's employment; and (4) a co-employee may be considered a "third person" as used in HRS § 386-3(a).

This conclusion, however, does not dispose of all of the claims in Yang's complaint. We cannot conclude, based on the record and the arguments made, that Yang's claim for wrongful termination in violation of public policy, as alleged in Count 5 of her complaint, seeks redress for an injury arising out of and in the course of Yang's employment with A&F. See Parnar v. American Hotels, Inc., 65 Haw. 370, 652 P.2d 625 (1982) (holding that employer may be held liable in tort where the discharge of an at-will employee violates a clear mandate of public policy). We express no opinion as to the merits of this claim or whether this claim might be subject to dismissal, after further proceedings, on grounds not argued to the Circuit Court or this court. However, it does not appear "beyond doubt" that Yang can prove "no set of facts in support of her claim" for wrongful termination that would entitle her to relief. See Wong v. Cayetano, 111 Hawai'i 462, 476, 143 P.3d 1, 15 (2006).

V. CONCLUSION

For the foregoing reasons, the Circuit Court's May 20, 2008 Order Denying Dismissal is affirmed in part, with respect to Yang's claim for wrongful termination in violation of public policy, and vacated with respect to Yang's other claims against

A&F.   This case is remanded for further proceedings consistent with this Opinion.


Phillip A. Li
(Li & Tsukazaki, LLLC)
for Defendant-Appellant
(Matt A. Tsukazaki, with
him on the briefs)

Peter C. Hsieh
for Plaintiff-Appellee
on the brief