9 P.3d 404

Kathleen M. FLOR, Claimant–Appellant,

v.

Carlos Richard HOLGUIN, D.D.S., and Pacific Insurance Company, Employer/Insurance Carrier–Appellee,

and

Douglas H. Dierenfield, D.D.S., and Travelers Insurance Company, Employer/Insurance Carrier–Appellee,

and

William R. Babbitt, D.D.S., and Pacific Insurance Company, Employer/Insurance Carrier–Appellee,

and

Carlos Richard Holguin, D.D.S., and Island Insurance Company, Employer/Insurance Carrier–Appellee,

and

William R. Babbitt, D.D.S., and Crawford And Company, Employer/Insurance Carrier–Appellee.

No. 22641.

Supreme Court of Hawai'i.

Aug. 30, 2000.

Scott R. Devenney, Honolulu, on the motions, for the employer-appellee, Carlos R. Holguin, D.D.S., and insurance carrier-appellee, Pacific Insurance Co., Ltd.

Jennifer M. Yusi (of Rush Moore Craven Sutton Morry & Beh), Honolulu, on the motions, for the employer-appellee Douglas H. Dierenfield, D.D.S., and insurance carrier-appellee, Travelers Insurance Company.

Ronald Q.F. Thom and Rock B. Ley (of Char Hamilton Campbell & Thom), Honolulu, on the motions, for employer-appellee William R. Babbitt, D.D.S., and Insurance carrier-appellee, Pacific Insurance Company.

Robert F. Miller, on the motions, for amici curiae American Medical Association and the Hawaii Medical Association.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, JJ., and Circuit Court Judge BAXA, Assigned by Reason of Vacancy.

## MOTIONS FOR RECONSIDERATION

Opinion of the Court by LEVINSON, J.

The employers/insurance carriers/appellees Carlos Richard Holguin, D.D.S., and Pacific Insurance Company (hereinafter, Holguin/Pacific), Douglas H. Dierenfield, D.D.S., and Travelers Insurance Company (hereinafter, Dierenfield/Travelers), and William R. Babbitt, D.D.S., and Pacific Insurance Company (hereinafter, Babbitt/Pacific) [hereinafter, collectively, "the Employers"] have moved for reconsideration of this court's opinion, filed on May 30, 2000, in *Flor v. Holguin*, 94 Hawai'i 70, 9 P.3d 382 (2000) [hereinafter, "*Flor I* "]. The American Medical Association (AMA) and the Hawaii Medical Association (HMA) [hereinafter, collectively, "the AMA/HMA"] have filed an *amicus curiae* brief.

The only issue meriting our further attention is the assertion that the Employers should be entitled to adduce evidence regarding the question whether exposures to the hepatitis C virus subsequent to the claimant-appellant Kathleen M. Flor's initial infection contributed to or otherwise aggravated her disability. Inasmuch as the nature of the compensability of an injury resulting from hepatitis C as an "occupational disease" posed a novel question in this jurisdiction, we agree that *Flor I* articulated new standards that the parties did not have occasion to address. Therefore, we amend our decision in *Flor I*, on remand, to allow the Employers the opportunity, as they see fit, to bolster or rebut the presumption that Flor's continued exposure to the conditions that initially precipitated her hepatitis C contributed to or otherwise aggravated the progression of her disease.

The background of this case is summarized in *Flor I*, 94 Hawai'i at 74–76, 9 P.3d at

386–388. The material holdings of *Flor I* were as follows:

> We hold that an employee's injury caused by a disease is compensable as an "injury by disease," pursuant to HRS § 386–3, when the disease (1) is caused by conditions that are characteristic of or peculiar to the particular trade, occupation, or employment, (2) results from the employee's actual exposure to such working conditions, and (3) is due to causes in excess of the ordinary hazards of employment in general. In this connection, and pursuant to HRS § 386–85, the burden is on the employer seeking to avoid liability to demonstrate by substantial evidence that these conditions are not present.
>
> . . . .
>
> We hold that a claimant in a case arising under the "injury-by-disease" prong of HRS § 386–3 may rely upon the . . . "date of disability," which typically is the last day of employment but, as indicated *supra,* may also be the date of diagnosis of the disabling condition, in order to identify the "date of injury" required . . . in connection with the filing of a workers' compensation claim. . . .
>
> . . . .
>
> . . . [T]he record establishes that [Flor's] contact with potentially contaminated blood continued throughout her employment with the Employers. The testimony adduced by the parties focused on the time when Flor originally contracted the disease. However, nothing in the record suggests that subsequent exposures did not contribute to the ongoing progression of the disease. Ultimately, the cause of Flor's hepatitis C and its precise relationship to each of her employers remains unknowable. None of the Employers, however, carried their burden of demonstrating that Flor's employment with them did not contribute to her disability.
>
> . . . .
>
> On remand, the Director will be faced with the task of determining which of the Employers are liable for the payment of Flor's workers' compensation benefits and the allocation of such liability. . . .
>
> . . . .

> We hold that if an employee's occupational disease is medically diagnosed and ultimately causes the employee's work disability, then the employer and/or its insurer at the time of such diagnosis are liable for the payment of the employee's workers' compensation benefits. We further hold that [a] subsequent employer and/or its insurer at the time of the employee's diagnosis[ ] are solely liable only if the contribution of the subsequent employment to the development of the disability is established by medical evidence and there is no rational basis for apportionment. Finally, we hold that if the medical evidence establishes a rational basis upon which to apportion liability among successor and/or predecessor employers and/or their insurance carriers and the apportionment will serve the interests of fairness to both the employers and the employee entitled promptly to receive the compensation, then the Director is authorized to order such an apportionment.
>
> In the present matter, Flor's hepatitis C was actually and conclusively diagnosed on January 12, 1994. . . .
>
> . . . . We have applied a modified version of the last injurious exposure rule in holding that Flor's employers and/or their insurers as of January 12, 1994 are liable for the payment of the benefits to which her claim entitles her. Inasmuch as, on that date, Flor was concurrently employed by three dentists, who were insured by two carriers, the Director will be required to determine the liability of each of those employers for her workers' compensation benefits.
>
> The last injurious exposure rule is not helpful in resolving the additional and distinct matter of apportioning the liability of multiple and *concurrent* (as opposed to *successive* ) employers. . . .
>
> The apportionment of liability among concurrent employers involves an exercise in fact-finding. . . .
>
> . . . .
>
> We note that the Workers' Compensation Law provides for apportionment of liability for an injured employee's benefits

between the employer and the special compensation fund when the employee is concurrently employed in more than one employment and sustains an injury while working for one of the employers. *See* HRS § 386–51.5 (Supp.1999). However, the statute does not address the circumstance of multiple concurrent employers being simultaneously liable for the employee's benefits.

We hold that in these circumstances, the Director may apportion liability among the liable employers. Furthermore, we agree with the courts that have approved the apportionment of liability in proportion to the wages earned by the employee in the employ of each of those employers. Such a rule is consistent with the general principle that workers' compensation disability benefits are determined on the basis of the employee's weekly earnings, *see* HRS § 386–31, and it is simple to apply, thereby reducing the risk and cost of the litigation respecting the liability of each of the concurrent employers.

94 Hawai'i at 81, 83, 85, 90 – 92, 9 P.3d at 393, 395, 397, 402–404 (some citations omitted) (footnotes omitted) (emphases in original).

It should be noted that we did not expressly determine, or even assume, in *Flor I* that subsequent contact with the Hepatitis C virus in fact aggravated or accelerated the development of Flor's disease. We merely held, *inter alia*, that the Employers bore the burden of adducing substantial evidence that Flor's contact with potentially contaminated blood, which continued throughout her employment with the Employers, did not contribute to her condition. *Id.* at 83, 9 P.3d at 397. Based on the record before us and the weight of analogous authority from other jurisdictions, we viewed hepatitis C as an occupational disease caused by contact with blood containing the hepatitis C virus. *Id.* at 77 – 78, 84, 9 P.3d at 389–390, 396. The present record reflects that medical science recognizes a multitude of strains or genotypes of the hepatitis C virus characterized by varying degrees of virulence and drug resistance. Thus, on the present record, it is conceivable that a reinfection with a different strain of the hepatitis C virus could affect the condition of the infected individual. However, it is not for this court to find such a fact. It must be found by the trier of fact based on evidence adduced by the parties. In the absence of such evidence, we concluded on the record in *Flor I* that the Employers had failed to carry their statutory burden. Nevertheless, in view of the fact that *Flor I* addressed a novel question in this jurisdiction, we believe that both fairness and the interests of justice require us to allow the Employers an opportunity to adduce relevant evidence on remand.

The AMA/HMA cite a variety of sources from the medical literature dealing with the mechanism of transmission of hepatitis C. They urge that, "[i]f, as the medical literature indicates, the course of chronic hepatitis C is associated with the means, and not the frequency, of exposure to the virus, then repeated exposures in the workplace would not contribute to the progression of the disease." Thus, the AMA/HMA's suggestion that, according to current medical research, once an individual first contracts hepatitis C, subsequent exposures to the virus do not contribute to the progression of the disease, is tantamount to a claim that the *initial* exposure to the hepatitis C virus is the *only* "injurious" exposure; in other words, the AMA/HMA argue that the *first* "injurious exposure" to the hepatitis C virus may also be the *last* "injurious exposure." If that is indeed the case, then any employer for whom Flor worked subsequently to having contracted the disease could not be liable for workers' compensation benefits, inasmuch as Flor's "injury by disease" would not have resulted from her "actual exposure" to the "working conditions" of that particular employment. *See Flor I*, 94 Hawai'i at 81, 9 P.3d at 393 (citing *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 519 S.E.2d 583, 592 (1999)).

On the other hand, the AMA/HMA mischaracterize the material issue as being whether the "last injurious exposure rule" would apply in the present case in the event that, after Flor initially contracted hepatitis C, subsequent exposures to the hepatitis C

96

virus could not have contributed to or otherwise aggravated the progression of the disease. After all, the rule is not grounded in "the assumption that repeated exposures contribute to the occupational disease," as the AMA/HMA suggest, but, rather, in the administrative efficiency that the rule affords absent medical evidence by which to establish a rational basis for apportioning liability for the payment of workers' compensation benefits among several otherwise liable employers. *See Flor I*, 94 Hawai'i at 83 – 92, 9 P.3d at 397–404.

■ Correlatively, the Employers have suggested that *Flor I* inconsistently assumed that Flor's exposure to the hepatitis C virus contributed to the progression of her disease *before* it was first medically diagnosed but not *after*. They are mistaken. As we explained in *Flor I*, 94 Hawai'i at 88, 9 P.3d at 400, "there is no reason to apply the [last injurious exposure] rule with any greater arbitrariness than is required to achieve its purposes." (Citation and internal quotation marks omitted.) (Some brackets added and some omitted.) Consequently, we held in *Flor I* that any employers for whom Flor commenced working subsequent to the conclusive diagnosis of her hepatitis C would not be liable for her workers' compensation benefits *absent proof that such work contributed to or otherwise aggravated her condition. Id.* at 90 & n. 11, 9 P.3d at 402 & n. 11. Indeed, as a general proposition, "when disability manifests itself in an employment that could not have contributed to it, but a prior employment in fact did so, the prior employer is liable under the last injurious exposure rule, [even though] the date of disability is the later date of diminished earning capacity." *Id.* at 90 n. 11, 9 P.3d at 402 n. 11. Nevertheless, "there may be other scenarios." *Id.*

A careful review of the record, which was before the LIRAB at the time that it entered summary judgment against Flor and in favor of the Employers, reveals that the medical evidence established, at most, that Flor had contracted hepatitis C at some time, which was not susceptible to any more precise med-

ical identification, before 1990. That is to say, the medical evidence reflected that the precise time when Flor first contracted hepatitis C was not possible to ascertain and that any attempt to describe a more detailed time line regarding the development of Flor's disease would amount to a mere estimate or guess. Thus, were the AMA/HMA's theory of the development of hepatitis C to be accepted by the trier of fact on remand, the presumption of compensability would be rebutted at most as to the employers who employed Flor commencing in or after 1990. As we noted in *Flor I*, Babbitt, Dierenfield, and Holguin admitted that their respective employment of Flor commenced in 1987, 1989, and 1991. 94 Hawai'i at 74, 9 P.3d at 386. Accordingly, on the record in *Flor I*, Babbitt and Dierenfield would remain liable for workers' compensation benefits, even if it were established that subsequent exposures to the hepatitis C virus could not have affected the disease process of an individual who already carried the virus. Moreover, Flor averred in an affidavit, which was attached to her memorandum in opposition to the Employers' motion for summary judgment, that she had performed work for Holguin beginning in 1987 "on a cash payment basis." If Flor's averment were accepted by the trier of fact, then Holguin would also be liable, as we originally held in *Flor I*, but that judgment belongs to the Director on remand.

Based on the foregoing analysis, the Employers' motion for reconsideration is granted in part and denied in part. On remand to the Director, the Employers may, as they see fit, seek to bolster or rebut the presumption that Flor's continued exposure to the conditions that initially precipitated her hepatitis C contributed to or otherwise aggravated the progression of her disease. Depending upon the Director's findings of fact in this regard, the Director shall determine which of the Employers, if any, are liable for the payment of Flor's worker's compensation claim. In all other respects, our decision in *Flor I* is affirmed.