Electronically Filed
Intermediate Court of Appeals
30673
22-JAN-2014
07:49 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

MARK K. ADAMS and JOANIE ADAMS and NELSON KOON SUNG NG
and ZINNIA K. L. NG, Plaintiffs-Appellants,
v.
DOLE FOOD COMPANY, INC., DOLE FRESH FRUIT COMPANY, STANDARD FRUIT
COMPANY, STANDARD FRUIT AND STEAMSHIP COMPANY, PINEAPPLE GROWERS
ASSOCIATION OF HAWAII, AMVAC CHEMICAL CORPORATION, SHELL OIL
COMPANY, THE DOW CHEMICAL COMPANY and OCCIDENTAL CHEMICAL
CORPORATION, Defendants-Appellees.

NO. 30673

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-1204)

JANUARY 22, 2014

FOLEY, PRESIDING JUDGE, LEONARD AND GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Plaintiffs-Appellants Mark K. Adams (Adams), Joanie
Adams, Nelson Koon Sung Ng (Ng), and Zinnia K.L. Ng (collectively
"Plaintiffs") appeal from a Revised Final Judgment filed on
July 14, 2010 by the Circuit Court of the First Circuit (circuit
court)[1] which entered judgment in favor of Defendants-Appellees

---

[1] The Honorable Glenn J. Kim (Judge Kim) and the Honorable Rom A.
Trader (Judge Trader) presided.

Dole Food Company, Inc. and Dole Fresh Fruit Company (Dole Defendants)[2] and against Plaintiffs.

The Revised Final Judgment was entered in light of the circuit court's grant of the Dole Defendants' motion to dismiss the claims asserted against them (Motion to Dismiss) and the circuit court's denial of the Plaintiffs' motion to amend their complaint (Motion to Amend). Following the circuit court's rulings on the Motion to Dismiss and the Motion to Amend, the circuit court granted the Plaintiffs' motion pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) for certification and entry of final judgment as to the Dole Defendants.[3]

On appeal, the Plaintiffs contend that the circuit court erred by granting the Motion to Dismiss and abused its discretion in denying their Motion to Amend.

For the reasons set forth below, we hold that: (1) the circuit court did not err in dismissing the claims against the Dole Defendants based on the allegations in the complaint; but (2) the circuit court abused its discretion in denying the Plaintiffs leave to amend their complaint.

## I. Case Background

### A. Complaint

The Plaintiffs filed the complaint on June 29, 2007 against the Dole Defendants, the Pineapple Growers Association of Hawaii (PGAH), Amvac Chemical Corporation (Amvac), Shell Oil Company (Shell), The Dow Chemical Company (Dow), and Occidental Chemical Corporation (Occidental). Plaintiffs seek recovery for alleged damages to their health, welfare, and lives resulting from exposure to a chemical pesticide, dibromochloropropane (DBCP), which was allegedly manufactured by the defendants or

---

[2] In the complaint, Standard Fruit Company and Standard Fruit and Steamship Company were identified as part of the "Dole Defendants," but on April 7, 2008, the parties stipulated to dismiss Standard Fruit Company and Standard Fruit and Steamship Company.

[3] Claims remained in the case against the other defendants.

utilized by the defendants on commercial pineapple farms where Adams and Ng worked during the 1970s.

According to the complaint, Adams was exposed to DBCP between 1974 and 1975, while employed as a pineapple field worker by the Dole Defendants, their subsidiaries or agents in Wahiawā, Oʻahu. As a result of this exposure, Adams alleges he suffered serious and permanent injuries, including, but not limited to, testicular cancer.

The complaint alleges that Ng was exposed to DBCP between 1971 and 1973, while employed as a pineapple harvester by the Dole Defendants, their subsidiaries or agents at the Dole Pineapple Plant located in Lānaʻi City, Maui County. As a result of this exposure, Ng alleges he suffered serious and permanent injuries including, but not limited to, severe injury to his reproductive capacities and testicular cancer.

The complaint alleges claims for negligence, conspiracy, strict liability, intentional tort, and breach of implied warranty, and requests compensatory and punitive damages.

### B. Procedural Background

Amvac, Occidental, Dow, Shell, and PGAH filed answers from December 2007 to February 2008.

The Dole Defendants did not file an answer and instead, on March 3, 2008, filed the Motion to Dismiss, seeking dismissal of the claims against them or, in the alternative, a more definitive statement of certain claims.

A little over four months later, on July 21, 2008, and while the Motion to Dismiss was pending, the Plaintiffs filed the Motion to Amend. A combined hearing on both motions was held on December 2, 2008, wherein the circuit court orally granted the Motion to Dismiss and denied the Motion to Amend.

On April 20, 2009, the circuit court entered separate written orders granting the Motion to Dismiss and denying the Motion to Amend.[4]

On July 14, 2010, the circuit court entered its Revised Final Judgment,[5] from which the Plaintiffs timely appealed.

On appeal, Dow, Occidental, and Shell each filed Notices of Being Nominal Appellee, stating that they have no interest in the outcome of this appeal and would not be filing an answering brief.

## II. Standards of Review

### A. Motion to Dismiss

We review the circuit court's ruling on a motion to dismiss *de novo*. *Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008).

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. This court must, therefore, view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternate theory. Consequently, in reviewing the circuit court's order dismissing the plaintiffs' complaint in this case, our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.

*Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 113 Hawai'i 251, 266, 151 P.3d 732, 747 (2007) (citations and internal quotation marks omitted).

### B. Motion to Amend

We review the denial of leave to amend a complaint under the abuse of discretion standard. *Gonsalves v. Nissan Motor Corp. in Hawai'i, Ltd.*, 100 Hawai'i 149, 158, 58 P.3d 1196, 1205 (2002); *see also Dejetley v. Kaho'ohalahala*, 122 Hawai'i 251,

---

[4] On March 11, 2009, this case was reassigned from Judge Kim to Judge Trader.

[5] The circuit court entered its original Final Judgment on August 6, 2009, from which the Plaintiffs appealed. However, on January 7, 2010, this court entered an Order Dismissing Appeal for Lack of Jurisdiction because the August 6, 2009 Final Judgment did not satisfy the requirements for an appealable judgment.

269, 226 P.3d 421, 439 (2010). "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Dejetley*, 122 Hawai'i at 269, 226 P.3d at 439 (citation and internal quotation marks omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* at 270-71, 226 P.3d at 440-41 (citation and internal quotation marks omitted).

### III. Discussion

### A. The Motion to Dismiss Was Properly Granted

In the order granting the Motion to Dismiss, the circuit court states that it dismissed the claims against the Dole Defendants "for all of the reasons set forth in the Motion and other related submissions by the Dole Defendants, in the Dole Defendants' Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint . . . and in the argument related thereto[.]"

In its Motion to Dismiss, the Dole Defendants argued that the Plaintiffs' claims were barred by the exclusivity provision of Hawaii's Workers' Compensation Law (WCL), set forth in Hawaii Revised Statutes (HRS) § 386-5 (1993), and that the circuit court lacked subject matter jurisdiction over Plaintiffs' claims under HRS § 386-73 (Supp. 2012). Additionally, the Dole Defendants argued that the conspiracy and intentional tort claims should be dismissed because the Plaintiffs failed to state cognizable causes of action. In the alternative, the Dole Defendants moved for a more definite statement as to both of these claims under HRCP Rule 12(e).

On appeal, the Plaintiffs argue that the circuit court erred in dismissing their complaint because (1) only one employing entity can claim the protection of the WCL exclusive remedy; (2) the civil conspiracy claim does not involve "work injuries" and thus should not be barred by HRS § 386-5; and (3) the intentional tort claim also is not barred by HRS § 386-5.

The applicable standard of review regarding a motion to dismiss requires that we construe the complaint's allegations as true and view them in the light most favorable to the non-movant Plaintiffs. *See Kahala Royal Corp.*, 113 Hawai'i at 266, 151 P.3d at 747. The relevant allegations set forth in the Plaintiffs' complaint are as follows:

> 6. . . . . Dole Food Company, Inc. is the successor in interest to Castle & Cooke, Inc.
>
> . . . .
>
> 12. . . . . Dole Food Company, Inc. is the ultimate parent corporation of Standard Fruit Company, Standard Fruit and Steamship Company, and Dole Fresh Fruit Company (collectively "the Dole Defendants"). These subsidiaries are so integrated and controlled by Dole Food Company, Inc. that they are alter egos of Dole Food Company, Inc. The Plaintiffs are suing the Dole Defendants for the tortious activities performed at the behest, and under the control of, Dole Food Co., Inc. and/or its predecessors-in-interest.
>
> . . . .
>
> 15. . . . . Dole Fresh Fruit Company is an alter ego of Standard Fruit Company, Standard Fruit and Steamship Company and/or Dole Food Company, Inc. These subsidiaries are so integrated and controlled by Dole Fresh Fruit Company that they are alter egos of Dole Fresh Fruit Company.
>
> 16. Defendants The Dow Chemical Company, Occidental Chemical Corporation, Shell Oil Company, Standard Fruit Company, Standard Fruit and Steamship Company, Dole Food Company, Inc., Dole Fresh Fruit Company, The Pineapple Growers Association, their subsidiaries and/or affiliates or predecessors-in-interest, developed, manufactured, sold, distributed, and used nematocides containing the chemical dibromocholoropropane, commonly known as DBCP.
>
> . . . .
>
> 19. Plaintiff Mark Adams alleges he was exposed to Defendants' products between 1974 and 1975 and, as a result, has suffered serious and permanent injuries including, but not limited to, testicular cancer. He discovered his injuries were related to DBCP exposure less than 2 years prior to filing this Complaint (or a complaint in another jurisdiction tolling the statute of limitations), and did not discover and could not have discovered his injuries and their cause prior to that time.
>
> 20. Plaintiff Mark Adams was employed as a pineapple field worker by the Dole Defendants, their subsidiaries or agents in Wahiawa, Oahu between 1974 and 1975. He was exposed to the Defendants' DBCP products while employed in the commercial cultivation of pineapples in Hawai'i.
>
> . . . .

6

> 22. <u>Plaintiff Mark Adams, while an employee of Dole, was routinely exposed to DBCP manufactured by the various</u> Defendants.
>
> . . . .
>
> 24. Plaintiff Nelson Ng alleges he was exposed to Defendants' products between 1971 and 1973 and, as a result, has suffered serious and permanent injuries including, but not limited to, severe injury to his reproductive capacities and testicular cancer. He discovered his injuries were related to DBCP exposure less than 2 years prior to filing this Complaint (or a complaint in another jurisdiction tolling the statute of limitations), and he did not discover and could not have discovered his injuries and their cause prior to this time.
>
> 25. <u>Plaintiff Nelson Ng was employed as a pineapple harvester by the Dole Defendants, their subsidiaries or agents</u> at the Dole Pineapple Plant located in Lanai City, Maui County in or around 1971 to 1973. <u>He was exposed to the Defendants' DBCP products while employed in the commercial cultivation of pineapples in Hawai'i</u>.
>
> 26. Plaintiff Nelson Ng <u>while an employee of Dole,</u> assisted in pesticide chemical research conducted at the Dole Pineapple Plant.
>
> 27. Plaintiff Nelson Ng worked around plants and soils that had been routinely treated with DBCP manufactured by the various Defendants.

(emphases added). In sum, the complaint alleges injury to Adams and Ng by exposure to DBCP while they were employed by the Dole Defendants and that the Dole Defendants were alter egos of each other.

Pursuant to HRS § 386-3 (Supp. 2012), the WCL covers employees who suffer "personal injury either by accident arising out of and in the course of employment or by disease proximately caused by or resulting from the nature of the employment[.]" The exclusivity provision relied on by the Dole Defendants is set forth in HRS § 386-5, which states that

> [t]he rights and remedies herein granted to an employee or the employee's dependents on account of a <u>work injury</u>[6] suffered by the employee <u>shall exclude all other liability of the employer to the employee, the employee's . . . .</u>

---

[6] HRS § 386-1 (1993) defines "work injury" as "a personal injury suffered under the conditions specified in section 386-3."

> spouse[7] . . . or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

(emphases added). Thus, if the complaint alleges a "work injury" within the meaning of HRS § 386-1 and § 386-3, then pursuant to HRS § 386-5, Plaintiffs' claims against Adams and Ng's employer are barred.

Even when construed in a light most favorable to Plaintiffs, the complaint alleges the Dole Defendants to be Adams and Ng's employer. The complaint also alleges an occupational disease within the meaning of HRS § 386-3.[8] As to this type of work injury, the Hawai'i Supreme Court has stated

> an employee's injury caused by a disease is compensable as an "injury by disease," pursuant to HRS § 386-3, when the disease (1) is caused by conditions that are characteristic of or peculiar to the particular trade, occupation, or employment, (2) results from the employee's actual exposure to such working conditions, and (3) is due to causes in excess of the ordinary hazards of employment in general[.]

*Flor v. Holguin*, 94 Hawai'i 70, 81, 9 P.3d 382, 393 (2000), *modified on rehr'g by Flor v. Holguin*, 94 Hawai'i 92, 9 P.3d 404 (2000) (internal citations omitted). Here, Adams and Ng allege that they suffered from testicular cancer and other reproductive injuries (1) which were caused by the Dole Defendants' use of DBCP in pineapple cultivation (a condition particular to their employment); (2) which resulted from their actual exposure to DBCP in pineapple cultivation; and (3) which were due to workplace exposure to a harmful pesticide, DBCP (a cause in excess of ordinary employment hazards). Thus, given the allegations in the complaint and the exclusivity provision in

---

[7] Under HRS § 386-5, liability of Adams and Ng's employer to their spouses is also excluded on account of a work injury suffered by Adams or Ng.

[8] "A disease 'resulting from the nature of the employment' is, by definition, an 'occupational disease.'" *Flor v. Holguin*, 94 Hawai'i 70, 80, 9 P.3d 382, 392 (2000) *modified on rehr'g by Flor v. Holguin*, 94 Hawai'i 92, 9 P.3d 404 (2000).

HRS § 386-5, the WCL is the exclusive remedy for claims against the Dole Defendants for the alleged injuries to Adams and Ng.

We disagree with the Plaintiffs' argument that only one employing entity can claim the liability protection of the WCL exclusive remedy provision. The Plaintiffs cite no authority for this argument. The plain language of the relevant statutory provision, HRS § 386-5, refers to "liability of the employer" but does not indicate that only one employing entity can claim such exclusivity. *See* HRS § 386-5. Similarly, the definition of "employer" contained in HRS § 386-1 does not indicate that there can only be one employer for purposes of WCL exclusivity. Based on the Plaintiffs' *express allegations* that they were employed by the Dole Defendants and that the Dole Defendants were alter egos of each other, the circuit court properly dismissed the Plaintiffs' claims as to all Dole Defendants. *See Suzuki v. Castle & Cooke Resorts*, 124 Hawai'i 230, 232-34, 239 P.3d 1280, 1282-84 (App. 2010) (recognizing that a parent company would be entitled to immunity under WCL exclusivity if it were an alter ego of its subsidiary which employed the Plaintiff).

Plaintiffs further argue that, even if the WCL applies to the Dole Defendants, the conspiracy and intentional tort claims in the complaint are not barred by the WCL's exclusive remedy provision. We disagree.

Plaintiffs cite no authority holding that a conspiracy claim is outside the WCL's exclusive remedy provision. Rather, they rely on *Hough v. Pacific Ins. Co.*, 83 Hawai'i 457, 927 P.2d 858 (1996), where the Hawai'i Supreme Court held that tort and other claims by an employee against the workers' compensation insurance carrier did not involve "work injuries" and were not barred by the WCL. Plaintiffs argue that their conspiracy claim is similar to *Hough* because the alleged wrongful actions in this case, *i.e.*, suppressing the truth and promoting misleading information about DBCP, are separate from the day-to-day conduct of an employer. This argument is unavailing. In *Hough*, the

claims were based on the harm that arose from the insurer's conduct in handling the workers' compensation insurance claim and were not based on the underlying work injuries. *Id.* at 462, 927 P.2d at 863. Here, the Plaintiffs' complaint seeks recovery for the injuries that Adams and Ng sustained from their employment. *Hough* is inapposite.

As to the intentional tort claim asserted by Plaintiffs, the WCL does not provide a general exception to allow intentional tort claims against an employer. The Plaintiffs point to *Furukawa v. Honolulu Zoological Soc'y*, 85 Hawaiʻi 7, 18, 936 P.2d 643, 654 (1997) as recognizing that intentional tort claims are outside the workers' compensation system. However, as noted in *Yang v. Abercrombie & Fitch Stores*, 128 Hawaiʻi 173, 181, 284 P.3d 946, 954 (App. 2012), the *Furukawa* decision allowed an employee's discrimination claim to proceed based in part on a statute that explicitly provides that the WCL does not bar such claims filed with the Hawaiʻi Civil Rights Commission. In other words, the legislature had established an exception to WCL exclusivity for the claim asserted in *Furukawa*. Moreover, this court in *Yang* declined to "read *Furukawa*'s recognition of decisions in other states [regarding intentional torts] as creating an exception to the exclusivity provision[.]" *Yang*, 128 Hawaiʻi at 182, 284 P.3d at 955. Noting that the legislature has created exceptions to the exclusivity provision for specific intentional acts, but not others, this court held in *Yang inter alia* that "*Furukawa* does not create an exception to the exclusive remedy provision under HRS § 386-5 for all intentional torts[.]" *Id.* at 183, 284 P.3d at 956. *See also Iddings v. Mee-Lee*, 82 Hawaiʻi 1, 8 n.5, 919 P.2d 263, 270 n.5 (1996) (recognizing that the WCL allows claims against a *co-employee* for "wilful and wanton misconduct" but noting that "[w]e express no opinion regarding, nor do we acknowledge the existence of, any analogous exceptions to *employer* immunity.")

The circuit court thus properly granted the Motion to Dismiss, thereby dismissing the claims against the Dole Defendants based on the allegations in the complaint.

## B. The Amended Complaint Should Have Been Allowed

We next address Plaintiffs' contention that the circuit court abused its discretion in denying their Motion to Amend. The Plaintiffs sought to amend their complaint pursuant to HRCP Rule 15(a). Because this motion followed the Motion to Dismiss, HRCP Rule 15(a)(2) applied. *See* HRCP Rule 15(a)(2); *see also Hirasa v. Burtner*, 68 Haw. 22, 25-26, 702 P.2d 772, 775 (1985). This rule provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*" HRCP Rule 15(a)(2) (emphasis added).

The Plaintiffs sought to make several changes to their complaint purportedly after they reviewed Adams and Ng's federal social security records and after receiving the Dole Food Company, Inc.'s May 16, 2008 response to Plaintiff's request for admissions.[9] First, instead of alleging that "Dole Food Company, Inc. is the successor in interest to Castle & Cooke, Inc.," the Plaintiffs sought to allege that "Dole Food Company, Inc. *may have an interest in* Castle & Cooke, Inc." Second, instead of alleging that Adams and Ng were employed by the "Dole Defendants, their subsidiaries or agents," the Plaintiffs sought to allege that Adams and Ng were employed by "Castle & Cooke, Inc., and/or Dole Packaged Foods, Inc."[10] Third, the Plaintiffs sought to add allegations that Plaintiffs had "non-work related" exposure to

---

[9] As discussed further *infra*, the Dole Food Company, Inc.'s response to Plaintiffs' request for admissions stated that information known or obtainable by the company was insufficient to admit or deny that Adams and Ng were not in its "employment" during the time periods alleged in the complaint.

[10] Castle & Cooke, Inc. and Dole Packaged Foods, Inc. are not named parties in this case.

DBCP.[11]  According to the Plaintiffs, the proposed amendments to the complaint would clarify that their injuries arose outside the scope of employment and that their alleged employer was not a party to the suit, thus their claims are not barred by the WCL exclusivity provision.

"A denial of leave to amend under HRCP Rule 15(a) is within the discretion of the trial court." *Gonsalves*, 100 Hawai'i at 158, 58 P.3d at 1205.  In interpreting HRCP Rule 15(a), the Hawai'i Supreme Court has looked to the general standard applied by federal courts:

> In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require[], be "freely given."

*Id.* at 160, 58 P.3d at 1207 (quoting *Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co.*, 89 Hawai'i 157, 162, 969 P.2d 1275, 1280 (1998)); *Dejetley*, 122 Hawai'i at 270, 226 P.3d at 440. "Rule 15(a) of the HRCP is functionally identical to Rule 15(a) of the Federal Rules of Civil Procedure.  Where a Hawai'i rule of civil procedure is identical to the federal rule, the interpretation of this rule by federal courts is highly persuasive." *Dejetley*, 122 Hawai'i at 270, 226 P.3d at 440 (citing *Fed. Home Loan Mortg. Corp.*, 89 Hawai'i at 162 n.1, 969 P.2d at 1280 n.1) (internal quotation marks omitted).

The circuit court's order denying Plaintiffs' Motion to Amend states that it is based on "all of the reasons set forth in the Dole Defendants' Memorandum in Opposition to Plaintiffs' Motion, . . . in the Motion to Dismiss . . . and other related submissions by the Dole Defendants, and in the argument related thereto."  Essentially, the Dole Defendants argued below that the proposed amendments were made in bad faith to avoid the WCL

_____

[11]  For instance, Plaintiffs sought to amend the complaint to allege that Adams and Ng had resided in housing provided by Castle & Cooke, Inc., which was near to the pineapple fields and which also exposed them to DBCP.

exclusivity bar asserted in the Dole Defendants' Motion to
Dismiss; and that granting leave to amend would further delay the
action, cause prejudice, and prove futile because the proposed
amendments did not escape WCL exclusivity and the conspiracy and
intentional tort claims still failed to state claims upon which
relief could be granted.

### 1. Bad Faith

Given the general explanation of its ruling, the
circuit court apparently accepted the Dole Defendants' argument
that the Plaintiffs were precluded from amending their complaint
because such amendments were inconsistent with the original
complaint. The Dole Defendants argue that Plaintiffs' attempt to
amend their complaint was in bad faith and that the proposed
amended complaint amounts to a sham pleading, citing in part to
HRCP Rule 11(b)(3)[12] and *Reddy v. Litton Industries, Inc.*, 912
F.2d 291, 296-97 (9th Cir. 1990) ("Although leave to amend should
be liberally granted, the amended complaint may only allege
'other facts consistent with the challenged pleading.'")
(citation omitted). The circuit court, however, made no finding
one way or another as to any violation of HRCP Rule 11. *See* HRCP
Rule 11(c)(3). Moreover, it is questionable whether *Reddy*
provides support for the Dole Defendants' position.

In *PAE Government Services, Inc. v. MPRI, Inc.*, 514
F.3d 856 (9th Cir. 2007), the Ninth Circuit Court of Appeals
(Ninth Circuit) directly addressed the question of whether an
amended complaint containing allegations contrary to a prior

---

[12] HRCP Rule 11(b)(3) provides in relevant part:

> **(b) Representations to court.** By presenting to the court (whether
> by signing, filing, submitting, or later advocating) a pleading,
> written motion, or other paper, an attorney or unrepresented party
> is certifying that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under
> the circumstances:
>
> . . .
>
> (3) the allegations and other factual contentions have evidentiary
> support or, if specifically so identified, are likely to have
> evidentiary support after a reasonable opportunity for further
> investigation or discovery[.]

complaint necessarily constituted a sham pleading or was brought in bad faith. *Id.* at 858. There, the district court had struck allegations in an amended complaint because they contradicted allegations in a prior complaint. The Ninth Circuit noted that:

> By striking the allegations in PAE's amended complaint as a "sham," the district court effectively resolved those allegations on the merits. In other words, it determined that the allegations in the amended complaint were unfounded because they contradicted (in the district court's view) earlier allegations PAE made in its original complaint. But the Federal Rules of Civil Procedure do not authorize a district court to adjudicate claims on the merits at this early stage in the proceedings; the court may only review claims for legal sufficiency. *See* Fed.R.Civ.P. 12(b). Adjudication on the merits must await summary judgment or trial.

*Id.*

The court thus directly posed the question before it, and answered the question, as follows: "Does the fact that an amended complaint (or answer) contains an allegation that is apparently contrary to an earlier iteration of the same pleading render the later pleading a sham? The answer is: not necessarily." *Id.* The court explained that:

> Even assuming that the two pleadings were irreconcilably at odds with each other, this would not, by itself, establish that the later pleading is a sham.
>
> At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, *see* Fed.R.Civ.P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

14

*Id.* at 858-59.[13]

However, if Rule 11 procedures are followed and bad faith is established, this would certainly warrant denial of a motion to amend a pleading. As expressed by the Ninth Circuit:

> This does not mean, of course, that allegations in a complaint can never be frivolous, or that a district court can never determine that a complaint or answer was filed in bad faith. But the mechanism for doing so is in Rule 11, which deals specifically with bad faith conduct. MPRI points to Rule 11 as a source of the district court's authority for the order it entered here. But Rule 11 can play no role in this case because the district court did not invoke the rule's procedural safeguards, nor did it employ the rule's substantive standard, which would have required a finding that PAE or its counsel acted in bad faith.

*Id.* at 859.

We adopt the above views quoted from *PAE Government Services, Inc.* Moreover, as to *Reddy*, the Ninth Circuit in *PAE Government Services, Inc.* read its own precedent as simply "stand[ing] for the unremarkable proposition that, where a complaint cannot be cured by amendment, the district court may deny leave to amend under Rule 15." 514 F.3d at 859 n.4; *but see Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998) (holding that the district court did not abuse its discretion in striking allegations in an amended complaint that were materially different than prior allegations and relying in part on *Reddy*). Even if we fully consider the statement in *Reddy* that an amended complaint "may only allege other facts consistent with the challenged pleading[,]" 912 F.2d at 297 (internal quotation marks omitted), we do not believe that it sets the better course. Rather, as discussed in *PAE Government Services, Inc.*, we hold that a proposed amended complaint asserting allegations that are inconsistent or contrary to a prior complaint does not, *in and of itself*, constitute bad faith or a sham pleading. However,

---

[13] The HRCP does not require complaints to be verified and allows pleadings in the alternative. *See* HRCP Rule 11(a); HRCP Rule 8(a) and (e)(2).

proceedings pursuant to HRCP Rule 11 can establish bad faith warranting a court's denial of leave to file such an amendment.[14]

We conclude that under the circumstances in this case, Plaintiffs' Motion to Amend was not brought in bad faith. Although Plaintiffs' counsel certainly had an obligation to comply with HRCP Rule 11 in filing the initial complaint and any other pleadings, no proceedings were undertaken pursuant to Rule 11 and the circuit court's denial of the Motion to Amend was not based on a bad faith determination under Rule 11. Further, it is significant that before filing the Motion to Amend, Plaintiffs received discovery responses from Dole Food Company, Inc. which raised a question about whether Dole Food Company, Inc. was an employer of Adams or Ng. Specifically, in its responses to Plaintiffs' request for admissions, Dole Food Company, Inc. stated that the information known to or readily obtainable by it was insufficient to admit or deny: that Adams or Ng were not in the "employment" of Dole Food Company, Inc. during the times alleged in the complaint; or that Dole Food Company, Inc. did not issue any federal IRS forms W-4, W-2, or 1099 to Adams or Ng during time periods alleged in the complaint. The Plaintiffs' request for leave to amend the complaint based upon this recently discovered information was not in bad faith.

## 2. Undue Delay and Prejudice

The circuit court apparently accepted the Dole Defendants' argument that permitting the Plaintiffs to amend their complaint would be prejudicial because the Motion to Dismiss had already been filed, further delay would result, and the parties would have to work up another motion to dismiss.

Plaintiffs' filing of the Motion to Amend after the Motion to Dismiss was filed does not in and of itself warrant denial of the Motion to Amend. In *Hirasa*, the Hawai'i Supreme

---

[14] By our holding, we do not preclude the possibility that other procedures or grounds may establish bad faith for purposes of denying leave to amend a complaint.

Court held that the trial court abused its discretion in denying a motion to amend, even though it was filed after a motion to dismiss, because the trial court failed to state any substantial reasons for the denial and, with the amended complaint, claims could be asserted on the merits. 68 Haw. at 25-26, 702 P.2d 772, 775-76. Here, the circuit court did not provide any substantial reasons for denying the Motion to Amend, and as discussed in section III.B.3 below, the proposed amended complaint asserts non-futile claims.

Additionally, prejudice or undue delay warranting denial of leave to amend has been found in cases where the movant has waited multiple years to request leave to amend. *See Keawe v. Hawaiian Elec. Co.*, 65 Haw. 232, 239, 649 P.2d 1149, 1154 (1982) (upholding the trial court's denial of a motion to amend on prejudice grounds where the movant waited approximately four years and after dismissal had been granted to request leave to amend the complaint); *see also R.S. Ellsworth, Inc. v. AMFAC Fin. Corp.*, 65 Haw. 345, 352, 652 P.2d 1114, 1119 (1982) (rejecting party's request for remand to amend complaint filed six years prior). In this case, Plaintiffs filed their complaint on June 29, 2007; the Dole Defendants filed their Motion to Dismiss on March 3, 2008; Plaintiffs served Dole Food Company, Inc. with a request for admissions on April 18, 2008; the Dole Food Company, Inc. served its responses to the request for admissions on May 16, 2008; and Plaintiffs filed their Motion to Amend on July 21, 2008. Thus, Plaintiffs requested leave to amend approximately one year after filing their complaint, four months after the Dole Defendants filed their Motion to Dismiss (which was still pending), and two months after Dole Food Company, Inc. served its response to the request for admissions. These circumstances do not rise to the level of undue delay or prejudice.

### 3. Futility

The circuit court apparently accepted the Dole Defendants' argument that permitting Plaintiffs to amend would be futile. Where proposed amendments to a complaint would not survive a motion to dismiss, this court should affirm the denial of leave to amend on futility grounds. *See Office of Hawaiian Affairs v. State*, 110 Hawai'i 338, 365, 133 P.3d 767, 794 (2006).

### a. No WCL Bar

The Dole Defendants assert that even if amended, the claims would be barred by the WCL. We disagree. The proposed amended complaint would no longer allege that the Dole Defendants were Adams and Ng's employer, but rather that non-parties Castle & Cook, Inc. and Dole Packaged Foods, Inc. were the employers. Taking the *amended* allegations as true, for purposes of a motion to dismiss, the WCL would not bar the claims against the Dole Defendants.[15]

### b. Conspiracy and Intentional Tort Claims

The Dole Defendants further argue that, even without WCL exclusivity, the conspiracy and intentional tort claims would not survive a motion to dismiss because they fail to state cognizable claims.

"Under Hawai'i's notice pleading approach, it is no longer necessary to plead legal theories with precision." *Tokuhisa v. Cutter Mgmt. Co.*, 122 Hawai'i 181, 192, 223 P.3d 246, 257 (App. 2009) (quoting *Leslie v. Estate of Tavares*, 93 Hawai'i 1, 4, 994 P.2d 1047, 1050 (2000)) (internal quotation marks and ellipses omitted). "Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the

---

[15] Whether the amended allegations can stand up against a summary judgment motion is a separate matter that we do not address. In this regard, we note that we have denied the Dole Defendants' motion requesting that we take judicial notice of certain documents they contend bear on the question of which entity employed Adams and Ng. Such information is outside the pleadings and not relevant to our review in this appeal as to the Motion to Dismiss and the Motion to Amend decided by the circuit court.

18

plaintiff's claim is and the grounds upon which the claim rests. Pleadings must be construed liberally." *Id.* (quoting *Genesys Data Techs., Inc. v. Genesys Pac. Techs., Inc.*, 95 Hawai'i 33, 41, 18 P.3d 895, 903 (2001)).

> Moreover, consistent with the mandate of HRCP Rule 8(f) that '[a]ll pleadings shall be so construed as to do substantial justice,' the Hawai'i Supreme Court has rejected 'the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and in turn accepted the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Id.* (quoting *Hall v. Kim*, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971)).

HRCP Rule 9(b) provides in relevant part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As the Hawai'i Supreme Court stated in *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 30, 837 P.2d 1273, 1288 (1992), "[t]he rule is designed, in part, to insure the particularized information necessary for a defendant to prepare an effective defense to a claim which embraces a wide variety of potential conduct."

### (1) Conspiracy Claim

With respect to the conspiracy claim, the Dole Defendants argued, and the circuit court apparently agreed, that the conspiracy claim was futile because it did not set forth any underlying tort as required by the Hawai'i Supreme Court in *Ellis v. Crockett*, 51 Haw. 45, 57, 451 P.2d 814, 822 (1969).

The proposed amended conspiracy claim is similar as alleged in the original complaint, except that the amended complaint no longer alleges that the Dole Defendants employed Adams and Ng, were alter egos of their employers, or are vicariously liable for their employers. Plaintiffs instead submit that the amended complaint would clarify that their claims do not seek to recover for "work injuries." In this context, the proposed amended conspiracy claim alleges:

> 40.    . . . Defendants and/or their predecessors in interest, their subsidiaries and/or affiliates, knowingly agreed, contrived, combined, confederated and <u>conspired</u>

among themselves and with others to cause the Plaintiffs' injuries, illnesses, and diseases by exposing the Plaintiffs to harmful and dangerous DBCP-containing products and to deprive the Plaintiffs of the opportunity of informed free choice as to whether to use the DBCP-containing products and to expose themselves to the dangers. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of, and exposure to, Defendants' DBCP-containing products. Each of the Defendants aided and abetted the other Defendants in committing the tortious acts that caused the Plaintiffs' injuries.

41. In furtherance of these conspiracies, Defendants performed the following overt acts, among others:

a. For many years, Defendants, individually, jointly and in conspiracy with each other, possessed medical and scientific data, and test reports, which clearly indicated DBCP-containing products were unreasonably dangerous, hazardous, deleterious, carcinogenic, mutagenic, teratogenic and potentially deadly;

b. despite medical and scientific data, literature and test reports possessed by or available to Defendants, Defendants, individually, jointly and in conspiracy with each other, fraudulently, willfully and maliciously withheld, concealed and suppressed the medical and scientific data, literature and test reports regarding the risks of DBCP-containing products from the workers who were exposed to them and using them, the public, and the agricultural community;

c. caused to be released, published, and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of DBCP-containing products which Defendants knew were incorrect, incomplete, outdated, and misleading;

d. distorted the results of medical examinations conducted upon persons, who were using DBCP-containing products and being exposed to the products by falsely stating and/or concealing the nature and extent of the harm which they had suffered;

e. by the false and fraudulent representations, omission, and concealments set forth above, the Defendants individually, jointly, and in conspiracy with each other, intended to induce the Plaintiffs to rely upon the false and fraudulent representations, omissions, and concealments and to continue to expose them to the dangers inherent in the use of and exposure to Defendants' DBCP-containing products.

42. The Plaintiffs reasonably and in good faith, relied upon the false and fraudulent representations,

> omissions, and concealments made by the Defendants regarding the nature of the DBCP-containing products.
>
> 43. As a direct and proximate result of the Plaintiffs' reliance on the Defendants' false and fraudulent representations, omissions, and concealments, Plaintiffs have sustained damages as described below.

(emphasis added).

The Dole Defendants correctly assert that "there can be no civil claim based upon a conspiracy alone." *Ellis*, 51 Haw. at 57, 451 P.2d at 822; *see also Weinberg v. Mauch*, 78 Hawai'i 40, 49, 890 P.2d 277, 286 (1995) (dismissing conspiracy claim because the party failed to set forth any actionable claim based upon deceit). However, viewing the allegations in the light most favorable to the Plaintiffs and in light of Hawaii's liberal notice pleading requirements, the allegations sufficiently allege an underlying actionable claim of fraudulent misrepresentation. The Hawai'i Supreme Court has set forth the following elements for such a claim:

> (1) false representations were made by the defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them.

*Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc.*, 115 Hawai'i 232, 263, 167 P.3d 225, 256 (2007) (quoting *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000)) (internal brackets omitted). Moreover, this claim contains sufficient particularity as required by HRCP Rule 9(b). Specifically, the Plaintiffs allege that the Dole Defendants conspired to cause the Plaintiffs' injuries by: (1) willfully misrepresenting and suppressing the truth as to the risks and dangers associated with DBCP; (2) knowingly releasing incorrect information on DBCP; (3) intending to induce the Plaintiffs to rely on these false misrepresentations; and (4) the Plaintiffs reasonably, and in good faith, relied upon these representations.

Thus, the circuit court abused its discretion to the extent that it denied leave to amend on grounds that the amended conspiracy claim was futile.

### (2) Intentional Tort Claim

The Dole Defendants argued, and the circuit court apparently agreed, that the intentional tort claim would be futile because it is not a cognizable claim and is not specific enough. The proposed amended intentional tort claim is similar as alleged in the original complaint, except that the amended complaint no longer alleges that the Dole Defendants employed Adams and Ng, were alter egos of their employers, or are vicariously liable for their employers. Plaintiffs instead submit that the amended complaint would clarify that their claims do not seek to recover for "work injuries." In this context, the amended intentional tort claim alleges:

> 52. The injuries of the Plaintiffs are also due to the <u>intentional malfeasance</u> of Defendants and/or their subsidiaries and/or affiliates and are the direct and proximate result of these Defendants' volitional acts. Each of these Defendants knew of the dangers caused by DBCP-containing products, yet they knowingly, consciously and with substantial certainty of the consequences of their actions proximately caused the Plaintiffs' injuries in the following respects:

> a. Defendants knowingly concealed information concerning the adverse health effects of DBCP or DBCP-containing products from the Plaintiffs, the public, and the medical, scientific and agricultural communities;

> b. Defendants knew of the hazards posed by DBCP-containing products, yet, <u>intentionally exposed Plaintiffs to DBCP products in operations involving the Plaintiffs</u> and/or sold and distributed those DBCP products for use involving the Plaintiffs;

> c. Defendants <u>knew of the hazards to the Plaintiffs posed by DBCP-containing products and by the methods of application utilized, yet continued to use these methods and/or to allow others to continue to use these methods</u>;

> d. Defendants knew of the hazards to the Plaintiffs posed by DBCP-containing products, yet, failed to provide adequate protective clothing and equipment to the Plaintiffs and/or take steps to ensure that the Plaintiffs were provided adequate protection;

> e. Defendants knew of the hazards to the Plaintiffs posed by DBCP-containing products, yet, did not instruct consumers of the product, including the Plaintiff, in proper application techniques; and

f.      Defendants continued to sell, purchase and use DBCP-containing products after their use was suspended or banned by the United States government and, therefore, after Defendants were indisputably on notice of DBCP dangerous properties.

53.     Plaintiffs further allege Defendants are liable to the Plaintiffs for continuing harm resulting from the following volitional acts of Defendants:

a.      knowingly concealing from the Plaintiffs knowledge of the existence, nature, and severity of their health risks, and;

b.      knowingly failing to take steps to enable, alert or cause the Plaintiffs to seek medical treatment for their injuries.

(emphasis added).

Plaintiffs argue that this claim should be liberally read and construed as a claim for fraudulent concealment and/or for battery.  We disagree that this claim can be read to support a claim for fraudulent concealment or misrepresentation.  It does not contain sufficient particularized information, especially with respect to the third and fourth elements of such a claim (that the Dole Defendants falsely represented information in contemplation of the Plaintiffs' reliance and that the Plaintiffs did in fact rely upon such information).  *See Venture 15, Inc.*, 115 Hawai'i at 263, 167 P.3d at 256 (quoting *Shoppe*, 94 Hawai'i at 386, 14 P.3d at 1067)).

However, we agree with the Plaintiffs that this claim is sufficient to allege a cause of action for battery against the Dole Defendants in their alleged capacity as non-employers of Adams and Ng.  "[A] defendant causes battery when he or she intentionally causes bodily contact to the plaintiff in a way not justified by the plaintiff's apparent wishes or by a privilege, and the contact is in fact harmful or against the plaintiff's will."  *Williams v. Aona*, 121 Hawai'i 1, 13, 210 P.3d 501, 513 (2009) (citation and internal quotation marks omitted).  The Restatement (Second) of Torts § 18 (1965) provides, in relevant part:

§ 18. Battery: Offensive Contact

(1) An actor is subject to liability to another for battery if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) an offensive contact with the person of the other directly or indirectly results.

In explaining the "contact with another's person" that is required for a battery claim, comment c to this section states, in pertinent part:

It is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive.

Restatement (Second) of Torts § 18 cmt. c at 31 (1965).

Plaintiffs' intentional tort claim alleges that the Dole Defendants, in a non-employer capacity, intentionally exposed Adams and Ng to DBCP knowing of the hazards posed by the chemical and knowing of the hazards posed by the method of application utilized. This is sufficient to allege a non-futile battery claim. *See Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1178 (Pa. Super. 1989) (holding that allegations that defendant deliberately exposed plaintiff to dangerous levels of radiation was sufficient to allege a cause of action for battery).

The circuit court thus abused its discretion to the extent that it denied leave to amend on grounds that the amended intentional tort claim was futile.

### IV. Conclusion

We affirm the circuit court's order dismissing the claims against the Dole Defendants based on the allegations in the complaint. However, we vacate the circuit court's order denying the Plaintiffs' Motion to Amend. Therefore, the Revised Final Judgment entered on July 14, 2010 by the Circuit Court of

the First Circuit is vacated, and the case is remanded to the circuit court for further proceedings, consistent with this opinion.


On the briefs:

Scott M. Hendler
(HendlerLaw, P.C.)
Jonathan Massey
(Massey & Gail LLP)
Leslie S. Fukumoto, AAL, ALC

for Plaintiffs-Appellants

Melvin M. Miyagi
Ross T. Shinyama
Angela T. Thompson
(Watanabe Ing LLP)
Andrea E. Neuman
(Gibson Dunn & Crutcher LLP)

for Defendants-Appellees
Dole Food Company and
Dole Fresh Fruit Company